### FIELD *et al.* v. DREW THEOLOGICAL SEMINARY.

#### (*Circuit Court, D. Delaware.* February 10, 1890.)

1. CHARITIES—CHARITABLE BEQUESTS—CONDITION SUBSEQUENT.
    A condition, in a bequest for educating two young men for the ministry, that they shall, after entering it, pursue a certain course, that was not optional with the minister, but subject to the control of the bishop, is a condition subsequent, and does not affect the validity of the gift.
2. SAME—BEQUEST TO CORPORATION TO BE THEREAFTER CREATED.
    A charitable bequest to a corporation not in existence at testator's death, but to be thereafter created by act of legislature in accordance with his will, is valid.
3. SAME—RELIGIOUS EDUCATION.
    A bequest providing for the creation of a fund for the education of "two young men, for all coming time," for the Christian ministry, is a valid charitable use.
4. SAME—INDEFINITENESS.
    A bequest, in trust, of a "sum of money sufficient to carry out [testator's] intention" "to provide for the education of two young men, * * * " where the trustees have accepted the trust, and young men have been appointed, and the expense of keeping them approximately known, is not void for indefiniteness.

(*Syllabus by the Court.*)

Bill in equity by William M. Field and Hannah Riddle, surviving executors of the last will of James Riddle, deceased, against the Drew Theological Seminary of the Methodist Episcopal Church.

*Bates & Harrington,* for complainants.

*Hoffecker & Hoffecker* and *Talmage W. Foster,* for respondents.

WALES, J. This suit is an amicable one, on bill, answer, and admitted facts. The complainants, after stating that they have been advised that some doubt exists as to the validity of a certain bequest contained in the will of their testator, and making the same a part of their bill, apply to the court for directions touching their duty in the premises, that they may be directed in what manner to proceed in order faithfully to execute the provisions of the will, and that the true construction thereof may be declared.

James Riddle, the testator, died August 21, 1873; and his will was duly probated, on the 20th day of October, in the same year. The bequest in question is in these words:

"*Item Twenty-First.* I direct that my executors shall provide, out of the money received for the rents of my real estate, and out of the profits of the

business of the firm of James Riddle, Son & Company, a sum of money sufficient to educate in the Drew Theological College, in Madison, New Jersey, two young men for the ministry of the Methodist Episcopal Church, one of whom is to go on the foreign mission work, the other to become a member of the Wilmington Conference. It is my will that this is to be continued perpetually, and that my son, Leander Franklin Riddle, and my son-in-law, William M. Field, shall so arrange the matter that a permanent fund shall be created for carrying out this, my intention of constantly providing for the education of two young men for the work of the ministry in all coming time, and that they (my son and son-in-law) during their life-time shall have the power to make the appointments, and that after their decease that power shall be given to the Wilmington Annual Conference to make selections; and, as soon as my said son and son-in-law shall create such a sum of money as they deem sufficient for the purpose above mentioned, the above devise shall not be a charge on my real estate."

In a subsequent part of the will the testator gives instructions to his executors, in relation to this bequest, as follows:

"*Item Twenty-Ninth.* Having in this my will ordered and directed that my executors hereinafter named shall create a fund sufficient to produce an annual income adequate to provide for the constant education of two young men for the ministry in the Methodist Episcopal Church at the Drew Theological Seminary, * * * therefore, to fully insure the carrying out of my intention and desire in reference to the several institutions or societies named in this item of my will, after the decease of my executors hereinafter named, or their disability, from any cause, during their life-time, to perform the duties imposed upon them in reference to said institutions or societies, I do order and direct my beloved son, Leander Franklin Riddle, to procure from the legislature of the state of Delaware an act of incorporation, incorporating a a board of trustees, they and their successors in trust, as shall be provided for in the act of incorporation to be procured as aforesaid, after the decease of my executors, or their disability, from any cause, to manage the fund created for the purpose hereinbefore mentioned, shall take charge of the fund so created, and keep the same securely invested in the same manner as my executors are herein directed to do, so long as they continue to hold such funds, which is perpetually. * * * "

Letters testamentary were granted to Hannah Riddle, William M. Field, and Leander F. Riddle, the executors named in the will. The executors have paid all the debts of the testator, and there remain sufficient and ample funds in their hands to pay and discharge the legacy bequeathed in the twenty-first item. The Drew Theological Seminary, founded in 1866, and incorporated under the laws of the state of New Jersey in 1868, has since then been maintained, and is now in operation, at Madison, as an institution for the education of young men for the ministry of the Methodist Episcopal Church, and for service as missionaries to foreign countries. In 1875, an act was passed by the legislature of Delaware entitled "An act to incorporate trustees to carry out certain provisions of the last .will and testament of James Riddle, deceased." By this act, Leander F. Riddle, William M. Field, and Hannah Riddle, and their successors to be selected as therein provided, are authorized to receive "all sums of money devised by James Riddell, deceased, for religious purposes, objects of charity, and educational purposes, in all cases where such legacies are made to be perpetual, and pay over to the

person or persons duly authorized to receive the same, in such sum, and at such times, as the same is directed to be paid, under and by virtue of the last will and testament of James Riddle," etc. Between the years 1874 and 1880, the executors, in pursuance of the provisions of the will, paid to the trustees of the seminary $2,760, to provide for the education of certain young men who had been duly appointed by the said William M. Field and Leander F. Riddle; and the said moneys were duly applied for the education of the persons so appointed, who, upon the completion of their education at the seminary, became respectively members of the Wilmington conference or missionaries to foreign countries. Leander F. Riddle died May 17, 1880; and since that time the surviving executors have declined to make any appointments to the seminary.

The first question is, does the bequest contained in the twenty-first item come within the general description of a charitable use? Without entering upon a review of the history of charitable trusts, it will be sufficient, in answer to this question, to refer to the well-settled principles and rules on this doctrine, and which are no longer open to doubt or cavil. A public or charitable trust is for the benefit of an uncertain class of persons, who are described in general language, and partake of a *quasi* public character, as, for example, "the poor" of a certain district, in a trust of a benevolent nature, or "the children" of a certain town, in a trust for educational purposes. It is also a distinctive feature of a charitable trust that it may be unlimited in its duration, and is not subject to, nor controlled by, the statutes which prohibit perpetuities. The statute of 43 Eliz. c. 4, enumerates the charitable uses which were to be held valid from the date of its enactment, but that enumeration was not an exhaustive one, nor was it intended, probably, to be exclusive, for it omits many objects which have since been decided to be public charities, including bequests for the promotion of religion, which have long been admitted to be charitable uses in the highest sense; and it is now the universally established doctrine that all particular objects embraced within the general spirit, intent, and scope of the statute are to be considered as charitable unless they violate some rule of public policy, or the provisions of some positive law. Bequests for educational purposes have also been held valid, as being clearly within the spirit of the statute. Such bequests embrace all trusts for the founding and supporting of schools, and other similar institutions, which are not strictly private; for the establishment of professorships and maintenance of teachers; for the education of designated classes of persons; and for the promotion of science and scientific studies. These definitions of a "charitable trust" have been so frequently made and widely accepted as to remove them from the field of discussion. They are supported by a long line of decisions, to a few only of which it may be profitable to refer. *Vidal* v. *Girard's Ex'rs*, 2 How. 127; *Ould* v. *Hospital*, 95 U. S. 303; *Jones* v. *Habersham*, 107 U. S. 174, 2 Sup. Ct. Rep. 336; *Saltonstall* v. *Sanders*, 11 Allen, 446; *Jackson* v. *Phillips*, 14 Allen, 539; *State* v. *Griffith*, 2 Del. Ch. 392; *Doughten* v. *Vandever*, 5 Del. Ch. 58. See, also, 2 Pom. Eq. Jur. §§ 1018–1023. An instructive authority is that

of *The Beloved Wilkes' Charity*, 7 Eng. Law & Eq. 73, (1851.) In that case, the testator had bequeathed to trustees the residue of his estate, for the maintenance, education, qualifying for and keeping at Oxford of a lad, in order to make him a minister of the Church of England, which said lad the trustees should choose from certain parishes named in the will, and of parents who were unable to maintain and educate him; and when and as soon as such person should have taken the degree of bachelor of arts, then, or before, if the income would admit thereof, the trustees should elect such another lad, and so on, in like manner, forever. The will had been made in 1772, and the validity of the bequest had never been questioned. The income of the charity amounted to about $1,250. The case came before the court on a petition protesting against the manner in which the trustees had exercised their discretion in making a certain election, in 1848, and praying that the same might be set aside, and a new election had. The opinion does not allude to the character of the bequest, it being apparently conceded, from the absence of any objection, that it was a valid public charity; and the case is referred to merely for the illustration it affords of the definition of a charitable trust, and for the striking resemblance it bears in this respect to the will of James Riddle. The bequest under consideration is not to the Drew Theological Seminary, nor was it intended directly for the benefit of that institution. The seminary is to be made use of as one of the instrumentalities for carrying out the far-reaching aim of the testator, namely, the promotion of religion by spreading abroad a knowledge of the truths of Christianity. This bequest may be looked at as having been designed either for the promotion of religion, or for an educational purpose. The training of young men for the Christian ministry includes that education and advancement in learning which form the preliminary preparation and discipline for the sacred office of preaching the Gospel. The ultimate purpose of the testator was to increase the number of those who should thereafter devote their lives to pious works, both at home and abroad. The influence for good to mankind of an educated and faithful Christian minister cannot be estimated. It is beyond human calculation. And a bequest which is designed to send forth periodically, two well-equipped young men, one of whom shall enter the field of religious instruction at home, and the other shall carry the light of the Gospel to them that sit in darkness, is a public charity, conceived in a spirit of the broadest philanthropy, and deserving of unqualified commendation.

The object of the bequest is specific and definite,—that is, for the promotion of religion; the directions of the testator for giving it effect are clearly stated; and there is nothing left for doubt, unless it may be in reference to the "sum of money sufficient to carry out the intention," "of constantly providing for the education of two young men for the work of the ministry in all coming time." But does the omission of the testator to specify the amount which shall be set apart as a fund for this purpose render the bequest void for uncertainty, and thus defeat the expressed intention of the will? No reason has

been suggested, nor is any authority cited, to sustain the affirmative of this proposition. Circumstances might be imagined which would cause a bequest to fail on account of its impracticability, where, for instance, no beneficiaries could be found answering to the description in the will, or where the residue of the testator's estate was totally inadequate to supply the requisite funds. But nothing of the kind exists here. The trustees, having once accepted the trust, cannot be released, except with the permission of a court of equity. Young men have been appointed, and the expense of keeping them in the seminary for the allotted time is approximately known; and it is a matter of easy calculation to arrive at the amount of a fund which would yield a yearly income sufficient to insure the continuance of the charity. If there should be any surplus income, in any one year, after defraying the expenses of keeping two students at the seminary, the disposition of such surplus can be provided for in advance, or by application to a court of equity, whenever the contingency occurs. The guiding rule in the construction of wills is that the intention of the testator, when clearly known, and it is consistent with law and public policy, should be upheld; and a charitable bequest, above all others, is to be so construed that it shall, if possible, be executed in the manner described by the donor.

An objection was intimated, rather than insisted on, that the bequest may be invalid on the ground that, after a beneficiary shall become a member of the Wilmington Conference, he may, in accordance with the Discipline, be transferred by a bishop to another conference. The objection is untenable. When a beneficiary has been prepared to become a member of the Wilmington Conference, or to go abroad as a missionary, and offers himself in good faith for either purpose, the will of the testator has been fully executed. The plan of the testator does not concern itself with the future of the beneficiary, further than it relies upon his good faith to continue to be and do what he was educated for, so far as it lies in his power. The condition that the beneficiaries shall become, respectively, members of the Wilmington Conference and foreign missionaries, is a condition subsequent, and cannot affect the original validity of the gift. *Jones* v. *Habersham, supra.*

A membership in any body implies, not only the enjoyment of its privileges, but subjection to the rules governing it. The testator was conversant with the Discipline of the Methodist Church, and never contemplated that any beneficiary who should become a member of the Wilmington Conference might not, under the discipline, be transferred in due season, or for sufficient cause, to another conference.

The trust is not invalidated by the fact that the corporation created by the legislature of Delaware, according to the directions of the will, was not in existence at the time of the testator's death. *Jones* v. *Habersham, supra.*

The opinion of the court is that the bequest contained in the twenty-first item of the will of James Riddle constitutes a valid charitable use, and a decree will be made accordingly. The amount of money neces-

sary to be appropriated to establish a fund for carrying the bequest into effect will be determined by a reference to a master, on failure of an agreement by counsel; and the court will give such further directions as may be required for the proper execution of the trust.