THE TRUSTEES OF WASHBURN COLLEGE V. D. L.
O'HARA *et al.*

No. 14,948   (90 Pac. 234.)

SYLLABUS BY THE COURT.

TRUSTS AND TRUSTEES — *Bequest for Educational Purposes —
"Public Charity."* In the residuary clause of a will the testa-
tor bequeathed all of the remainder of his estate, in trust, to
the trustees of an incorporated educational institution, to be
held by them as a perpetual fund for the higher education of
young men to be selected by such trustees for the Christian
ministry. *Held,* that such bequest created an educational
trust, which is a public charity.

Error from Reno district court; PETER J. GALLE,
judge. Opinion filed May 11, 1907. Reversed.

STATEMENT.

ON June 5, 1898, Samuel Dilley died in Reno county,
Kansas, leaving a will which, after making various be-
quests to children and grandchildren, provides as fol-
lows:

"After paying the above legacies, I give and be-
queath to the trustees of Washburn College, located at
Topeka, Kan., the balance of my estate, be it more or
less, to be held by them as a permanent fund and in-
vested and secured as such. The annual interest to be
used for the higher education (mainly) of young men
for the Christian ministry, on the following conditions:

"(1)  They must be members in good standing in
some Christian church, denominated evangelical, Con-
gregational preferred.

"(2)  They must present to said trustees testimoni-
als of such standing, and that they possess piety and
natural talent that will qualify them for usefulness in
Christian work, if the necessary education can be se-
cured.

"(3)  They must not use alcoholic beverages except
for medicine, nor tobacco in any form.

"(4)  They must not be or become members of any
oath-bound secret societies.

"(5)  In case of several applicants for the benefit
of this fund, my grandchildren or great-grandchildren

are to have first preference on the same conditions as others, and the children of Kansas home missionaries the second preference.

"(6) Young ladies may be admitted to the benefits of this fund if they wish to qualify themselves for missionaries, or for other Christian work, if in the judgment of said trustees the interests of Christ's kingdom demand it."

The will provided that the income from the entire estate should belong to the testator's widow, Belinda Dilley, during her life, and that the legacies should not be payable until after her death.

On June 21, 1898, the will was duly admitted to probate in Reno county, Kansas, and letters testamentary issued to Belinda Dilley, and Elmer Everett, one of the defendants in error, who qualified and gave bond. The widow elected to take under the will. No proceedings to contest or set aside the will were taken, and it now remains in full force. The executors proceeded with the administration under and pursuant to the directions and provisions of the will. Prior to October 23, 1905, Belinda Dilley died, and ever since then the estate has been administered by Elmer Everett, as sole executor or administrator with the will annexed.

On October 23, 1905, Elmer Everett, as sole executor, filed a final account in the matters of the estate, showing that all the real estate of the decedent had been divided as directed by the will or sold as therein provided; that all debts, claims and legacies against the estate had been fully paid except the bequest to the trustees of Washburn College; that all expenses of administration had been paid; and asking that the funds remaining in his hands, amounting to $2526.69, be distributed, and that he and his bondsmen be discharged.

On the same day the plaintiffs in error, and the defendants in error, D. L. O'Hara, Ida R. Garnett, Elbert A. Dilley, Earl Dilley, and Lulu Whipple, representing the heirs at law of Samuel Dilley, appeared in the probate court and claimed the money in the hands of the executor—the plaintiffs in error claiming it under the

foregoing provision of the will, and the defendants in error claiming it as the heirs at law of Samuel Dilley, deceased. After a hearing and argument the probate judge, on December 27, 1905, decided in favor of the heirs at law, holding void the provision of the will bequeathing the residue of the estate to the trustees of Washburn College, and ordering that the money, after the payment therefrom of $50 to the attorneys of the heirs for services in their contest over the money and $15 court costs in the contest, which sums were allowed and ordered paid out of the balance of $2526.69, be distributed among the heirs at law of Samuel Dilley, naming them and the amount each should take. The trustees of Washburn College appealed from this decision to the district court, and on January 5, 1906, the court heard and determined the cause, holding that the provision of the will attempting to bequeath the residue of the estate to the trustees of Washburn College in trust for the purposes specified in the will is void, and that the trustees of Washburn College take nothing by reason thereof; that the costs of the hearing in the probate and district courts, taxed at $27.10, and an attorney's fee of $50, be paid out of the fund, and that the balance of $2449.59 be distributed among the heirs at law of Samuel Dilley, naming them and the sum each should take. The trustees bring the case here for review.

*J. D. McFarland, L. H. Greenwood,* and *Hugh MacFarland,* for plaintiffs in error.

*George A. Vandeveer, F. L. Martin,* and *R. A. Campbell,* for defendants in error.

The opinion of the court was delivered by

GRAVES, J.: The residuary clause of this will is assailed upon the ground that it creates a trust which is not a public charity. The case of *Troutman v. De-Boissiere,* 66 Kan. 1, 71 Pac. 286, is cited as being directly in point and controlling upon this question. The

argument of the defendants in error is founded chiefly upon a statement in that opinion which reads: "A public charity is a gift to a public object which the state itself, with public resources, should, or lawfully might, foster." (Page 11.) This proposition does not appear in the syllabus and is not the question upon which the court divided. It cannot be said, therefore, that the court intended to decide that every public charity must be such as the state may lawfully maintain by public taxation. The real point decided was that in the trust there being considered the beneficiaries were limited to such an extent that the gift could not be regarded as a public charity. The statement quoted was used in the opinion by way of an argument to illustrate the general scope and extent of a trust which may be properly classed as a public charity. In that case the fund provided could only be used for the benefit of the orphans of deceased Odd Fellows of the state of Kansas. This limitation excluded it from the category of public charities.

The line of distinction which determines where a private charity ends and a public one begins is at times difficult to locate, and this difficulty has caused much of the apparent want of harmony which prevails among the decisions upon this subject. In this case, however, there is no uncertainty. The object of the trust provided for by the will of Samuel Dilley is the higher education of young men and women.

Bequests for educational purposes have been regarded by the courts of this country with special favor, and donations made for the founding and maintenance of institutions of learning or for increasing educational facilities have very generally been upheld as public charities. The numerous and varied educational purposes in support of which trusts have been created and sustained as public charities are partially collected in volume 2 of the fifth edition of Perry on Trusts, section 700, which reads:

"Almost all gifts for educational purposes are held

to be charitable; as, gifts for the advancement of learning in every part of the world, so far as circumstances will permit; or for the diffusion (a part in Pennsylvania, the residue in the United States) of useful knowledge and instruction among the institutes, clubs, or meetings of the working classes, or manual laborers by the sweat of their brow; to build or erect a school or free grammar-school, or a school for the sons of gentlemen; for the education of the scholars of poor people in a particular county; or to maintain a schoolmaster; or for the masters and fellows of a college; or for the foundation of a scholarship, fellowship, or lectureship in a college or university; or for the perpetual endowment of two schools; or to establish a college for orphans, although all ministers are forever excluded from its walls; or for the education of young men at Oxford for the Church of England, to be selected; or to maintain a library and reading-room; or for paying premiums for the most important discoveries or useful improvements made public upon light and heat; or for the civilization of Indians; or to assist literary persons in their pursuits, or to publish an essay on science; or to publish and distribute the works of Joanna Southcote; or to promote the moral, intellectual, and physical instruction and education of a city; or to create a 'change of sentiment,' which means to educate; or a fund to increase the salaries of teachers. Money in trust to support a school for the use of poor children cannot be applied to a public school where rich and poor are educated together; but it may be used in purchasing food and clothing and books for poor children, to enable them to attend such school."

The advantages, direct and indirect, which the highly educated citizen imparts to the general public cannot be estimated. Every advancement made in the scientific, mechanical, moral, literary or other pursuits of life adds to the general sum of human knowledge, comfort and happiness. As higher education increases civilization advances. The elevating and beneficent influences which the general public receives from educational sources make every citizen a beneficiary thereof, and furnish complete justification for placing every educational trust, not strictly private, and having in-

creased learning for its object, in the category of public charities.

It has been suggested that the rule stated applies to ordinary education such as may be acquired at public institutions of learning, but has no application here for the reason that the education provided for these beneficiaries is to be such as will fit them for the Christian ministry, in which the public, as such, can have no interest. We are unable to see how the future vocation of the student can be material in this inquiry. It is not important to the general public whether highly educated men engage in the law, medicine, mechanics, the ministry, or some other pursuit in which specialized learning is useful. The public is concerned, however, in having the greatest possible number of persons receive an educational training which will prepare them for successful work in whatever field of human endeavor they may desire to enter. Persons educated for the ministry do not always persist in preaching the Gospel. Many instances might be given of men who drifted away from this, their chosen profession, and by the application of their early educational training became public benefactors in other pursuits. There is nothing in the will of Samuel Dilley which amounts to a requirement or even a request that those who receive the education provided by him shall enter or continue in the ministry. If any of them shall feel that his life will be more useful if devoted to other pursuits, no restraint has been imposed to prevent the exercise of a free choice therein.

This bequest may be construed as having been designed either for the promotion of religion or for educational purposes; but, judging from its practical effects, the educational feature seems to be its principal and paramount purpose.

The case of *Field v. Drew Theological Seminary*, 41 Fed. 371, and this are very similar. The donor in that case provided for the education of young men for the

ministry to be selected by the trustees, two at a time, perpetually, one of whom was required to engage in foreign missionary work and the other to become a member of the home conference. The Drew Theological Seminary was charged with the duty of carrying out the wishes of the testator. In the opinion it was said:

"The bequest under consideration is not to the Drew Theological Seminary, nor was it intended directly for the benefit of that institution. The seminary is to be made use of as one of the instrumentalities for carrying out the far-reaching aim of the testator, namely, the promotion of religion by spreading abroad a knowledge of the truths of Christianity. This bequest may be looked at as having been designed either for the promotion of religion, or for an educational purpose. The training of young men for the Christian ministry includes that education and advancement in learning which form the preliminary preparation and discipline for the sacred office of preaching the Gospel. The ultimate purpose of the testator was to increase the number of those who should thereafter devote their lives to pious works, both at home and abroad. The influence for good to mankind of an educated and faithful Christian ministry cannot be estimated. It is beyond human calculation. And a bequest which is designed to send forth periodically two well-equipped young men, one of whom shall enter the field of religious instruction at home, and the other shall carry the light of the Gospel to them that sit in darkness, is a public charity, conceived in a spirit of the broadest philanthropy, and deserving of unqualified commendation." (Page 374.)

Whether the testator in this case intended by his donation to promote the interests of religion or to increase the opportunities for higher education, or both, is of little moment; in either case it is a matter in which the general public will be sufficiently benefited to make the bequest a public charity, and it should be upheld and administered as such.

The judgment of the district court is reversed, with direction to enter judgment in favor of the plaintiffs in error, and to order the executor of the last will and

testament of Samuel Dilley, deceased, to pay to the plaintiffs in error the amount due them under the residuary clause of the will, and otherwise carry out the views herein expressed.