No. 32,384

Louella Rudolph Hollenbeck, *Appellee,* v. Anna Cox Lyon et al.
(P. H. Halleck, Ex'r, and The City of Abilene), *Appellants.*

(47 P. 2d 63)

Opinion filed
July 6, 1935.

*Paul H. Royer* and *Arthur Hurd,* both of Abilene, for the appellants.

*Z. C. Millikin* and *William C. Millikin,* both of Salina, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This was an action to quiet title to certain real property in the city of Salina. The trial court rendered judgment for plaintiff. Defendants have appealed. The question presented is the construction of a will.

The facts are not controverted and may be stated as follows: Carrie Burton, widow of J. R. Burton, while residing at Salina, but temporarily sojourning in California, died May 31, 1931, leaving a will. This provided: *First,* that her executor pay all her just debts and funeral expenses.

"*Second.* After the payment of such funeral expenses and debts, I give, devise and bequeath the income of my property located in Salina (describing the property here in controversy) to (Mrs.) Louella Rudolph Hollenbeck, at present located in Fruitland, Idaho, during her lifetime, then same to be held in trust by executor and used for benefit of needy poor in and around Abilene, Dickinson county, Kansas."

By a later clause the testatrix nominated P. H. Halleck, of Abilene, to be executor of her will.

The will was filed for probate in the probate court of Saline county, and duly admitted to probate July 23, 1931. P. H. Halleck

was appointed and qualified as executor and proceeded to administer upon the estate. He made his final report as executor, the estate as such was closed, and he was discharged as executor January 9, 1933. No action was brought by anyone to set aside the will.

At the time of her death Carrie Burton was the owner of the real property in controversy, on which was a business building leased for a term of fifteen years from March 1, 1922, to a corporation which had agreed to pay taxes and insurance and to keep up repairs on the property, and in addition thereto to pay a stipulated sum, monthly, as rent, and which had the option to purchase the property for $30,-000 at any time within the term of the lease. The corporation now occupies the property under this lease. Since sometime prior to the filing of this action, on request of plaintiff and at the direction of P. H. Halleck, the tenant has been paying the monthly rental directly to plaintiff.

Carrie Burton left no surviving husband, child or children, natural or adopted, but left certain named persons, including plaintiff, cousins of deceased, as her only heirs at law as found and determined by the probate court. When a small child plaintiff went to live with and made her home with the Burtons. The Burton home was in Abilene for many years. Prior to the bringing of this action plaintiff obtained from all the other heirs at law deeds running to her for their interest, if any, in the real property in controversy.

It was agreed that Abilene is a city of the second class and has a population of about 6,000; that it is the county seat and located near the center of Dickinson county, which has a population of about 26,000; that needy poor exist in the city, and in the county outside the city, which the city is or may be liable to care for and support, as authorized by statute; that Carrie Burton resided for many years in the city of Abilene; that there are a number of other towns in Dickinson county, those closest to Abilene being (distances and directions, approximate) Solomon, nine miles west; Chapman, twelve miles east; Tolland, nine miles north; Enterprise, five miles east; Detroit, six miles east; Holland, fourteen miles south. These conditions existed substantially the same at the time the will was made and at the time of the trial.

Turning now to the legal questions. We first note this is not a contest of the will of Carrie Burton. Plaintiff claims to be entitled to the income from the property in controversy during her lifetime under and by virtue of the "second" clause of the will. Defendants

concede her right to such income for that time. No party to this action is seeking to set the will aside.

The real question presented is the construction of the phrase in the "second" clause of the will, ". . . then same to be held in trust by executor and used for benefit of needy poor in and around Abilene, Dickinson county, Kansas." Does this create a valid trust by which the testatrix disposed of the remainder of her estate in the property after having given income to plaintiff for her life? Shortly stated, plaintiff contends the phrase is ineffectual to create such a trust; that the result is the same as though the phrase had been omitted from the will; that Carrie Burton died intestate with respect to such remainder; hence, that it passed by descent to her heirs at law; that plaintiff is one of such heirs at law, and that prior to bringing this action she purchased the interest of the other of such heirs in the property in question; hence, that she is the owner of all rights in and title to the property. Shortly stated, defendants contend the phrase above quoted created a valid trust; that it vested title to the property in question in the trustee, subject to plaintiff's right to the income thereof for her life, and that after plaintiff's death the same should be used for the benefit of the needy poor in and around Abilene.

By giving plaintiff the income of the property during her life the testatrix vested in her a life estate. The fact that the probate court, at the time it approved the executor's final account, found who were the heirs at law of Carrie Burton, and also found plaintiff had a life estate in the property by virtue of the "second" clause of the will, but made no finding of a trust with respect to the remainder, does not preclude either the district court, or this. court, from construing the will and determining whether or not such a trust was created. (*Knox v. Knox,* 87 Kan. 381, 124 Pac. 409; *First Colored Baptist Church v. Caldwell,* 138 Kan. 581, 27 P. 2d 237.) Since the case comes to this court on the pleading and written stipulation of the facts, this court may examine the record and determine the legal questions presented with the same freedom the district court could do so. (*Palmer v. Johnson,* 132 Kan. 161, 164, 294 Pac. 874.) A trust created for the use or benefit of needy poor is for a charitable purpose. (11 C. J. 315.) Ordinarily a testator is presumed to have intended to dispose of all his property by his will, unless something therein indicates a contrary intention. (69 C. J. 91; *Jameson v. Best,* 124 Kan. 633, 635, 261 Pac. 582.) A testator may intend to

make a certain disposition of his property, or some part of it, but fail to so word his will as to accomplish his purpose; as when it is so worded as to violate some statute or well-settled rule of law, or when the language used is so uncertain in its meaning that it cannot be applied intelligently, or is too indefinite to carry out the purposes the testator obviously had in mind. These statements are made, not because they are seriously controverted here, but to segregate more clearly the real questions argued.

The intention of a testator with respect to the disposition of his property must be determined from the language used in his will, aided at times by evidence relating to the situation of the property and of the parties. The language used in this will makes it clear that the testatrix intended Mrs. Hollenbeck should have the income of the property in question during her life, and then it was to be held in trust and "used for the benefit of needy poor in and around Abilene." It is stipulated the testatrix had resided in Abilene for many years, and that needy poor exist in that locality. We may presume the testatrix knew of that fact and desired her property ultimately to be used for the benefit of such needy poor. Plaintiff does not contend that the intention of the testatrix was other than as just stated, but does contend the language used by the testatrix in her will, in an effort to create a trust for that purpose, is so indefinite and uncertain in its meaning that the trust cannot be carried out; hence, that it necessarily fails.

Plaintiff argues: How is this property to be "used"? It is a business property, not situated in Abilene, but in Salina, in another county. Is its occupancy to be turned over to the needy poor in and around Abilene? Is it to be rented and the proceeds used for their benefit, or is it to be sold and the proceeds, or the income therefrom, used for their benefit? Naturally these are questions which will arise in the administration of the trust and will rest with the sound discretion of the executor, with the aid of a court of chancery in the event of doubt. We are reminded the stipulation shows the present lessee has an unexpired option to purchase the property at a stated sum; hence, questions with respect to the use of the property itself may never arise. We do not regard uncertainties in this respect to be of such a character as to invalidate the trust.

Plaintiff's principal contention, however, is that in the use of the words "in and around Abilene," the territory in which there may

be needy poor, for the benefit of whom the property is to be used, is too indefinite. It is argued the words include all within the corporate limits of the city of Abilene, and some territory in addition to that, with no language used to express any limitation on such additional territory; the word used is "around" Abilene; how much territory is around Abilene, and where are its boundaries, if indeed, it has any? If this idea be carried far enough to make the provision for the benefit of the needy poor generally, the trust would not be void for that reason. In 11 C. J. 340 it is said:

"Indefiniteness of beneficiaries is one of the characteristics of a public charity or charitable use. Accordingly, uncertainty and indefiniteness as to the ultimate individual recipients are not by any means fatal to the validity of a charitable gift which in other respects is sufficient. Indeed, uncertainty and indefiniteness as to the individuals and numbers to be benefited are necessary and essential elements of a valid charitable public trust."

A charitable trust is not invalid because the scope of its benefactions is world-wide. In *First Camden, &c., Trust Co. v. Collins,* 110 N. J. Eq. 623, 160 Atl. 848, it was held:

"There is no rule of public policy in this state requiring a charitable trust to be held invalid because the scope of its benefaction is world-wide instead of limited to citizens of this state."

In *Kenney Presbyterian Home v. State,* 174 Wash. 19; 24 P. 2d 403, a testamentary gift in trust for a home for infirm and aged people unable adequately to provide for themselves, was held not void for uncertainty.

In *Madden's Petition,* 86 N. H. 583, 172 Atl. 435, a trust "for benevolent uses, among poor, suffering humanity, where it will do the most good in the world," was sustained.

In *Palmer v. Oiler, Exrx.,* 102 Ohio St. 271, 131 N. E. 362, a devise in trust "to be devoted to the needy and poor women," was sustained.

In *Lord v. Miller,* 277 Mass. 276, 178 N. E. 649, a will giving property to trustee for support or assistance of persons appearing to him to especially need assistance, was held to be not invalid because of uncertainty of beneficiaries.

Under these authorities had the testatrix in the will in question omitted the words "in and around Abilene, Dickinson county, Kansas," the will would not have been invalid because of indefiniteness of beneficiaries.

In 5 R. C. L. 346 it is said:

"Restrictions either as to locality or numbers included in a class of beneficiaries are not necessary to the validity of a charitable bequest. A charitable gift is good where there is no limit of space expressed, and it is none the less so when the benefit of the gift is confined in terms, as it must be in fact, to a particular locality. It is equally good when the limit, although real, is not geometrically exact. Hence, so long as the class for whose benefit the trust is created is definite the geographical limitations of the operation of the charity are unimportant."

The beneficiaries of a charitable trust may be localized by the donor to those of a certain city (*Treadwell v. Beebe,* 107 Kan. 31, 190 Pac. 768), or county (*Rishel v. McPherson County,* 122 Kan. 741, 253 Pac. 586), but in so localizing the beneficiaries of his bounty we find no rule of law which requires the boundaries of the locality to be so fixed as to coincide with those of a city, or a state, or of any governmental subdivision thereof. If the locality be fixed with reasonable certainty no reason appears why it should not be held sufficient.

Here it is clear the testatrix did not mean such a wide scope as the needy poor everywhere, or in the state, or even in the county. She had in mind benefit for the needy poor within the locality of her old home, and to express that she used the words "in and around Abilene." By this she meant to designate a location within and about the city. The language must be construed in accord with its context and approved usage. (R. S. 77-201, clause 2.) We think no one would have serious difficulty in understanding the words used to mean the needy poor within the city of Abilene and within the neighborhood or vicinity thereof who ordinarily come to the city for the purpose of transacting their business, or for religious, educational, or social purposes. It is true, there might be some uncertainty as to whether an individual would be situated within this area, but perhaps there would be no more difficulty in deciding that than in determining whether one within the city was within the class of needy poor. Impliedly and of necessity some discretion is vested in the trustee in determining those matters.

In a few of the states, New York among them, the principles as above enunciated are not recognized, or are recognized in part only, or there are specific statutes pertaining to the matter, or some phase of it. From those states decisions may be found not in harmony with what has been hereinbefore said. These are in the minority, however. The general rules, recognized in this state, are in harmony with what is written. Courts look with favor upon trusts for

charitable uses and construe language creating such trusts most favorable to their validity. Here the testatrix's purpose was that her property ultimately would be used for the benefit of the needy poor of the community in which she had lived for many years. She did not place this with the city or county officials to be administered, nor did she give it to any organization established, or to be established, which might have other or additional purposes. She vested it in a trustee to be administered by him for the specific charitable purposes she had in mind. We see no reason to hold such a worthy disposition of property to be invalid.

It necessarily follows the judgment of the court below must be reversed, with directions to enter judgment for defendants. It is so ordered.