No. 32,803

Mrs. H. A. Barnhart, Mrs. V. C. Kelley et al., *Appellants*, v. B. F. Bowers, Executor of the Estate of Sarah M. Simmons, Deceased, Old Order Church, Known as Eight Mile Church in Franklin County, and The Old German Baptist Church of Eight Mile District, *Appellees* (Nancy Sink Green and Viola Sink Stewart, *Appellants*).

(57 P. 2d 60)

Opinion filed May 9, 1936.

*W. S. Jenks*, of Ottawa, for the appellants.

*Fred M. Harris* and *B. W. Kelsey*, both of Ottawa, for the appellees.

The opinion of the court was delivered by

Thiele, J.: The question in this appeal is whether an unincor-

porated association has capacity to take a bequest, either in its own right or as beneficiary of a charitable trust.

Although issues were joined, at the trial the facts were agreed upon and dictated into the record, and so far as here necessary are stated. The last will of Sarah M. Simmons was admitted to probate August 22, 1932. Under its terms she made some specific bequests, which are not here involved. The residuary clause of the will recited:

"Item 5. All the rest and remainder of my estate after the same has been converted into money by my executor hereinafter named, I give, devise and bequeath to the Old Order Church, known as the Eight Mile Church, in Franklin county, Kansas, to be invested and reinvested among the members of said church, and the income derived therefrom to be used for the benefit of said church."

The Old Order Church, known as Eight Mile Church in Franklin county, Kansas, since 1884 has been an unincorporated religious society, its more correct name being The Old German Baptist Church of Eight Mile district. In 1891 it took title to a tract of land in the neighborhood known as Eight Mile district, under the first name. A church building was erected and church services have since been held there. The membership varied from time to time by reason of death, withdrawals or reception of new members, but was ascertainable as of a given date. Many years ago Mrs. Simmons joined the church by bringing her letter from another church of the same denomination. After the death of Mrs. Simmons, at a meeting of Old Order Church, a resolution was adopted that said church incorporate, and under that authority an application was made and a charter was granted to The Old German Baptist Church of Eight Mile district. Thereafter plaintiffs, as heirs at law of Mrs. Simmons, brought this action against the executor, the church as it was designated in the residuary clause of the will, the incorporated church, and certain heirs who had not joined as plaintiffs, as defendants, setting up the contentions of the parties and asking for construction of the will, and a finding and determination of the rights of all parties under the will.

The case was submitted on the agreed statement, and on July 30, 1935, the trial court rendered its decision in favor of defendants and directed that on final settlement of the estate the executor turn over and pay to the corporation, The Old German Baptist Church of Eight Mile district in Franklin county, Kansas, all funds to be dis-

tributed under the residuary clause of the will. The plaintiffs have appealed, contending that the Old Order Church, known as the Eight Mile church, being an unincorporated association, had no capacity to take the bequest, either in its own right or as trustee. Appellees contend the bequest was in the nature of a charitable use, that the church association could take, or if not, a charitable trust was created which should not be permitted to fail for want of a competent trustee.

Before entering upon a discussion of the main question presented, we note appellants' contention that if a trust was created, it was a trust to hold the fund and invest and reinvest it among the church members for their benefit. We are satisfied this claim cannot be sustained. Assuming a trust was created, the beneficiary was the church, the statement with respect to investment and reinvestment among the members of the church was only a direction to the trustee. The testator might have directed the fund be invested in United States bonds or other designated securities. Her direction that it be loaned to members of the church did not constitute them beneficiaries, but limited the investments of the fund.

Although there is some difficulty in defining all that may be included in a charitable use or a charitable trust, there is no doubt in the case at bar the testatrix intended a benefit to the designated church, and that a gift was given or a trust created for religious purposes and such as would be classified legally as a charity or a charitable trust. (11 C. J. 320, Charities § 24; 5 R. C. L. 325 *et seq.,* Charities § 48 *et seq.*; Restatement, Trusts § 368 and § 371.)

In determining whether the bequest in the residuary clause of the will is valid, it appears the question hinges on the capacity of an unincorporated association to take for a charitable use, either directly as a legatee, or as a beneficiary under a trust. The specific question does not seem to have been considered heretofore by this court. In *Kennett v. Kidd,* 87 Kan. 652, 125 Pac. 36 (on rehearing, 89 Kan. 4, 130 Pac. 691), a residuary bequest and devise to a local camp of Modern Woodmen was held invalid, on the ground that under the statute pertaining to fraternal orders it had no power to take, it being also held there was no trust for charitable purposes. Whether the local camp was a corporation or not does not affirmatively appear. Compare *Clark v. Watkins,* 130 Kan. 549, 287 Pac. 244, where a gift to a Masonic lodge for charitable uses was upheld. Whether the lodge was incorporated does not appear and was not considered.

In *Lehnherr v. Feldman,* 110 Kan. 115, 202 Pac. 624, the testator

by residuary clause left property to Kansas State Soldiers' Home at Dodge City, which was not a corporation, but was created by and existed at the pleasure of the state legislature. It was contended the beneficiary could not take, and the gift was not for charity. Owing to differences in the character of the beneficiary, we shall not go further into the facts, but in that case it was said:

"It is the settled rule that courts will look with favor upon all attempted charitable donations, and will endeavor to carry them into effect, if it can be done consistently with the rules of law." (p. 117.)

"When once a devise or grant is determined to constitute a charitable trust, courts look with liberality on the instrument creating it for the purpose of carrying out the intention of the donor. Technical rules of construction, which have often prevented conveyances or bequests from taking effect, are disregarded. Moreover, when it is ascertained that the donor intended to create a public charity it will not be allowed to fail because the trustee is indefinite or uncertain or incapable of taking. The contention here that the trust must fail because of the uncertainty of the trustee, overlooks the maxim that equity will never allow a trust to fail because of the want of a trustee. And for any misuse or attempted misapplication of the proceeds, the courts afford an ample remedy." (p. 121.)

It may be conceded that there are many authorities holding that unincorporated associations generally are incapable of taking or holding property either directly for charitable purposes or for the purpose of administering a charitable trust. (See 23 R. C. L. 443; 5 C. J. 1343; 11 C. J. 337.) But there are also authorities to the contrary, the trend being toward more liberal holdings with respect to such capacity.

In 1 Schouler on Wills, 6th ed. § 46, it is said:

"Unincorporated associations are becoming more and more important in recent years as the practice of carrying on business in the form of a trust or unincorporated association is becoming more prevalent. It has been recently held that such associations can be put into bankruptcy, and also there are various recent decisions in line with modern thought to the effect that they may be the recipients of testamentary favors."

In 1 Bogert on Trusts is the following:

"It sometimes happens that a settlor names as trustee a legal entity which lacks the capacity to receive any property interest or the particular property interest which the settlor has attempted to transfer in that case. The trustee named cannot be said to be nonexistent. It merely lacks the capacity for taking the property interest which every trustee must, by very definition, hold for another. Examples of this are found in the cases where the trustee named is an unincorporated association and by the law of the jurisdiction is not regarded as capable of taking title, or is a foreign corporation forbidden by statute to take as trustee, or is a corporation named in a will as trustee where

the witnesses of the will are stockholders of the donee corporation and therefore the gift to the corporation is void. Here the theory of the courts has been that the trust came into being despite the lack of a trustee able to take title, and that the grantor or successors of the testator would be treated as trustees of an express trust for the named beneficiaries until the court could appoint a new trustee. The courts have recognized the gift of the equitable interest as distinct and valid, notwithstanding the failure of the transfer of the legal interest.

"While the older attitude toward the capacity of unincorporated associations was that they were totally incompetent to take a property interest and hence attempted transfers to them were void, the modern tendency is to give force to the attempted conveyance to the association on one theory or another. Some courts seem to admit the capacity of such an association to take title and be a trustee, evidently taking the practical view that it is in fact a unit for the transaction of business. Others hold that, where the unincorporated association has charitable objects, it is incompetent to take, but the gift will be treated as creating a charitable trust for the objects of the association, and that equity will appoint a trustee. Or the gift may be treated as an effective transfer to the members of the association for their own benefit, or as a gift to a corporation which took over the position of the association after the attempted transfer to the association. A comparison to the attitude of equity toward unincorporated associations as *cestuis* is profitable." (p. 376, § 125.)

"In the previous discussion (Vol. 1, p. 376, § 125) of the capacity of unincorporated associations to act as trustees, reference has been made to the common-law attitude that such associations are not legal persons and cannot acquire property interests. The older and more conservative cases maintain this same attitude toward an unincorporated association as a *cestui que trust*. . . .

"The more modern tendency, however, is to give effect to private trusts for unincorporated associations, under one theory or another. . . .

"Where the unincorporated association is charitable in its nature, it would seem easy to support the trust as charitable. The *cestuis* then would not be the association or its members, but society as a whole or a class of society to be beneficially affected by the workings of the association.

"Looked at from the point of view of trust enforcement and parties to actions, there seems good ground to sustain trusts for unincorporated associations. The members of the association can always sue in equity to enforce the trust for the benefit of the association and so indirectly for their benefit. . . . It is believed that there will be an increasing disposition to uphold these trusts, either as trusts for *de facto* entities (the associations themselves) or as trusts for the members from time to time." (p. 489, § 167.)

And in discussing who may be the trustee of a charitable trust, it is said:

"It is well settled that the failure to name any trustee for the charitable trust, or the naming of a deceased person or other nonexistent legal entity, will not prevent the trust from arising, if the other requisite acts of creation have been performed. The court regards the expression of a charitable trust

intent and the indication of a class of beneficiaries as the important factors in creation. The personality of the trustee is not vital. There are many possible trustees available. The court can easily supply a trustee. The important matter is that the benefits of the property in question should go to some named social purpose. . . .

"That the trustee named is incompetent to take the legal estate will not bar the creation of the trust. The trust will be regarded as complete, with a mere vacancy in the trusteeship. Thus, unincorporated associations and foreign corporations are sometimes unable to receive title, but charitable trusts with them as trustees are valid. In many states, either by virtue of statute, or by judicial decision, unincorporated associations are regarded as competent trustees for charitable trusts. Some courts treat the association as a *de facto* legal entity; others treat it as still laboring under its common-law incompetency to take title, but consider the trust established for the purposes of the association." (2 Bogert on Trusts, p. 1049, § 328.)

And, as bearing on the above questions, see 11 C. J. 332, 337 (Charities §§ 48, 55); 5 R. C. L. 313, 315, 316 (Charities §§ 30, 33, 34).

The matter is also treated in Restatement, Trusts. Although, in section 378 (4), it is said that—

"If an unincorporated association has no capacity to take or hold property for its own benefit, it has no capacity to take or hold property upon a charitable trust."

Under comment *h* it is said:

"If property is conveyed . . . by will upon a charitable trust and the person named as trustee is incapable of taking title to the property the intended charitable trust does not fail, unless the settlor manifested an intention that the charitable trust should not arise or continue unless the person named by him acts as trustee or if the purposes of the trust cannot be carried out unless the person named by him acts as trustee."

In section 397 it is said:

"g. *Direct gift to unincorporated charitable association.* If the owner of property devises or bequeaths it to an unincorporated charitable association, a charitable trust may be created although the purposes of the trust are not mentioned in the will. If the association is incapable of taking title to the property and administering the trust, the court will appoint a trustee to take the title and administer the trust for the purposes of the association."

"h. *Gift to charitable corporation which has not capacity to take or hold.* If a testator devises or bequeaths property to a charitable corporation which has not capacity to take and hold the property, the disposition will not fail if the testator manifested an intention to devote the property to charitable purposes and not merely to make a gift to the particular corporation. This is true whether the gift to the corporation fails because it is incapable of taking by devise or bequest, or because the amount of property which the corporation can hold is limited, or because the corporation is not empowered to administer

a charitable trust for the intended purposes, or because the corporation has ceased to exist. In such cases the court can appoint a trustee to hold the property in trust for the intended charitable purposes."

We do not consider it necessary to refer to many of the citations in the briefs dealing with the questions mentioned in the above quotations, for to do so would unduly extend this opinion.

Although we have statutes recognizing certain unincorporated organizations as legal entities (R. S. 17-1705, R. S. 1933 Supp. 17-1223 and 40-202), and providing for incorporation of charitable organizations (R. S. 17-1701), and for disposition of the property of both incorporated and unincorporated religious organizations under certain situations (R. S. 17-1711 to 17-1716, inclusive; R. S. 1933 Supp. 17-1716a to 17-1716c, inclusive), there appears to be no statutory provision either allowing or denying an unincorporated charitable organization the right to own and hold personal property. While many unincorporated religious and charitable organizations do hold real estate in the names of trustees, just how they acquire, hold and own personal property is not so clear. But however that might be, this court has recognized that in a charitable trust it is not necessary the beneficiary be a legal entity. See *Treadwell v. Beebe,* 107 Kan. 31, 190 Pac. 768, where the beneficiaries were the needy and deserving inhabitants of the municipality, and *Hollenbeck v. Lyon,* 142 Kan. 352, 47 P. 2d 63, where the beneficiaries were the needy poor in and around Abilene. As we interpret the residuary clause under consideration, it appears the testatrix was not making an unqualified gift to the Old Order Church, but was appointing it as trustee of a fund to be invested as directed for the benefit of the church. This was the creation of a charitable trust and it should not be allowed to fail because of any lack of capacity of the designated trustee to so act. It is not necessary that we now determine whether an unincorporated charitable organization has capacity to own and hold property in its own right. We do hold that such an organization can be the beneficiary of a charitable trust. It was proper for the trial court to hold that a charitable trust was created of which Old Order Church, known as Eight Mile church, in Franklin county, Kansas, was the beneficiary, and there being failure by the testatrix to name a capable trustee, to appoint as trustee the subsequently incorporated The Old German Baptist Church of Eight Mile district in Franklin county, Kansas.

The judgment of the lower court is affirmed.