No. 41,439

In the Matter of the Estate of Stanton E. Freshour, Deceased.
(LISLE C. FRESHOUR and ESTHER GATEWOOD, *Appellees*, v. GEORGE
KING, Executor of the Last Will and Testament of Stanton E.
Freshour, Deceased, et al, *Appellants*.)

(345 P. 2d 689)

Opinion filed November 7, 1959.

*F. F. Wasinger,* of Hays, argued the cause and was on the brief for the appellant, George King, Executor.

*Henry F. Herrman,* of Hays, argued the cause and was on the brief for the appellant, Frederick W. Freking, Bishop of the Diocese of Salina, Kansas.

*Norman W. Jeter,* of Hays, argued the cause and was on the brief for the appellants, Trustees of the First Methodist Church of Hays, Kansas.

*Oscar Ostrum,* of Russell, argued the cause, and *J. Eugene Balloun,* also of Russell, was with him on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, J.: In this action the heirs of a testator challenge the validity of the trust provisions in the testator's will.

The question presented is whether certain devises and bequests in the testator's will establish charitable trusts or private trusts.

The decedent, Stanton E. Freshour, died testate on the 23rd day of April, 1953, at Hays, Kansas, and was survived by his two children. He was a resident of Ellis County, Kansas, and at the time of his death owned considerable real estate in Ellis County. His last will and testament was dated February 6, 1952, and was ad-

mitted to probate in the probate court of Ellis County on the 11th day of June, 1953. It was there established that the decedent was of legal age and sound mind and not under any restraint at the time he executed his last will and testament.

By the terms of the will the decedent devised to his daughter, Esther Gatewood, appellee, real estate which was appraised at $2,500. He also devised to his son, Lisle C. Freshour, appellee, real estate which was appraised at $8,000.

Omitting formal provisions of the will and the above devises to his children, the will provided:

"FOURTH: Unto Bishop Frank A. Thill or his successor as Bishop of the Diocese of Salina, I give, bequeath and devise the following described real estate situate in Ellis County, Kansas, to be held, used, or disposed of *for the benefit of the Parish of Saint Joseph's Catholic Church, Hays, Kansas,* to-wit:

"The South Half (S/2) of Section Twenty-one (21) in Township Fourteen (14) South, Range Twenty (20) West of the 6th P. M.

"FIFTH: Unto the trustees of the First Methodist Church, Hays, Kansas, I give, bequeath and devise the following described real estate situate in Ellis County, Kansas, to be held, used, or disposed of *for the benefit of the members of the First Methodist Church, Hays, Kansas,* to-wit:

"The North Half (N/2) Section Thirty-five (35) in Township Fourteen (14), South, Range Twenty (20) West of the 6th P. M.

"SIXTH: Unto Bishop Frank A. Thill or his successor as Bishop of the Diocese of Salina, I give, bequeath and devise the following described real estate situate in Ellis County, Kansas, to be held, used, or disposed of *for the benefit of the Parish of Saint Joseph's Catholic Church, Hays, Kansas,* to-wit:

"The East Half of the Southeast Quarter (SE/4) of Section Twenty-six (26) in Township Fourteen (14) South, Range Twenty (20), West of the 6th P. M.

"SEVENTH: Unto the Trustees of the First Methodist Church, Hays, Kansas, I give, bequeath and devise the following described real estate situate in Ellis County, Kansas, to be held, used, or disposed of *for the benefit of the members of the First Methodist Church, Hays, Kansas,* to-wit:

"The West Half of the South East Quarter (SE/4) of Section Twenty-six (26) in Township Fourteen (14) South, Range Twenty (20), West of the 6th P. M.

"EIGHTH: All the rest, residue and remainder of my estate, personal, real or mixed, wheresoever situate, I give, devise and bequeath as follows:

"(*a*) One Third part hereof to my children, Lisle C. Freshour and Ester Gatewood, share and share alike.

"(b) One third part thereof to Bishop Frank A. Thill or his successor as Bishop of the Diocese of Salina, to be held, used, or disposed of *for the benefit of the Parish of Saint Joseph's Catholic Church, Hays, Kansas.*

(*c*) The remaining one third part thereof to the Trustees of the First Methodist Church, Hays, Kansas, to be held, used, or disposed of *for the benefit of the members of the First Methodist Church, Hays, Kansas.*" (Emphasis added.)

The appraised value of the farm lands devised to the Trustees of the First Methodist Church totaled $36,800, and the farm lands devised to the Bishop of the Diocese of Salina for the Parish of Saint Joseph's Catholic Church were appraised at $20,800.

The heirs of the testator, appellees herein, attacked the trust provisions of the above will in the probate court, contending they were void, by answering the executor's petition for final settlement.

The probate court held valid charitable trusts were created by the provisions of the testator's will and ordered distribution in accordance with the terms of the will. The district court on appeal held the trust provisions created private trusts and as such were against the rule of perpetuities, among other things, and by reason thereof void. It is from the order of the district court that the appellants have taken their appeal to this court.

The parties concede that the testator intended by the controversial provisions of the will heretofore quoted to create trusts. The issue is whether the trusts created were valid charitable trusts or private trusts.

It is not disputed that the Trustees of the First Methodist Church of Hays, Kansas, are the governing body of that church and hold title to all real estate owned by the church; further, that the Bishop of the Diocese of Salina is the proper official to hold real estate title for Saint Joseph's Catholic Church of Hays, Kansas. Bishop Frank A. Thill, named in the testator's will, died on May 21, 1957, after the death of the testator, and this action was revived in the name of his successor, Bishop Frederick William Freking.

For reasons hereafter stated we think the decision of the probate court was correct.

The trial court found the First Methodist Church of Hays, Kansas, to be a religious corporation, and the Saint Joseph's Catholic Church of Hays, Kansas, to be an unincorporated religious body. We take judicial notice that religious corporations and unincorporated religious societies are designed and organized for religious and educational purposes.

The district court adopted the theory of the appellees, that the provisions of the will in question were ambiguous, and admitted extrinsic evidence as to the testator's intention. The court found it was the intention of the testator that his property be devised to the individual members of the two churches designated in the will. With respect to each trust provision the district court concluded:

"It is too indefinite because of lack of any controlling terminology in its objects; uncertainty of beneficiaries; and it violates the rule against perpetuities."

When a court is called upon to determine the force and effect to be given the terms of a will, the cardinal rule of construction to which all other rules are subordinate is that the intention of the testator as garnered from all parts of the will is to be given effect, and that doubtful or inaccurate expressions in the will shall not override the obvious intention of the testator. In construing a will the court must put itself as nearly as possible in the situation of the testator when he made the will, and from a consideration of that situation and from the language used in every part of the will, determine as best it can the purpose of the testator and the intentions he endeavored to convey by the language used. (*Beall v. Hardie,* 177 Kan. 353, 279 P. 2d 276; *Johnston v. Gibson,* 184 Kan. 109, 334 P. 2d 348, and cases cited therein.)

In determining the force and effect to be given the terms of a will, the court's first duty is to survey the instrument in its entirety and ascertain whether its language is so indefinite and uncertain as to require the employment of rules of judicial construction. Where, from an analysis of the entire instrument, no ambiguity or uncertainty is to be found in its language, the intention of the testator being clearly and unequivocally expressed, there is no occasion to employ rules of judicial construction and the will must be enforced in accordance with its terms and provisions. (*In re Estate of Porter,* 164 Kan. 92, 187 P. 2d 520; *Johnston v. Gibson,* supra; and cases cited in the foregoing authorities.)

The rules relating to the interpretation and construction of wills, insofar as applicable to the facts in the instant case, have been reviewed and stated by this court many times. To further elaborate upon them herein would serve no useful purpose. They may be found in *In re Estate of Porter,* supra; and *Johnston v. Gibson,* supra, to which reference is made.

There is no policy in this state to keep any class of property in a favored channel of inheritance as against a will, and when there is a will the presumption is against intestacy. (*Kirkpatrick v. Kirkpatrick,* 112 Kan. 314, 211 Pac. 146; and *In re Estate of Sowder,* 185 Kan. 74, 340 P. 2d 907.) The testator is presumed to have known the law of Kansas at the time he signed his will. (*In re Estate of Sowder,* supra.)

From an analysis of the entire instrument in question, we find no ambiguity or uncertainty in its language. Taking into consideration the situation of the testator at the time he made his will and the language used in every part of the will, the purpose and intention of the testator can be determined without resort to extrinsic evidence. Application of well-founded principles of law to the interpretation of the testator's will leads to the conclusion that it was the obvious intention of the testator to establish valid charitable trusts by the provisions here in controversy. Before proceeding to a review of the law on charitable trusts, it must be observed that our considerations are confined to the language used in the will. Extrinsic evidence admitted by the trial court must be disregarded, it being immaterial.

A charitable trust is defined in Restatement of Law, Trusts, § 348, p. 1095, as follows:

"A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose."

Included among the purposes which are charitable are the advancement of education and the advancement of religion. (Restatement of Law, Trusts, § 368, p. 1140; *Washburn College v. O'Hara,* 75 Kan. 700, 90 Pac. 234; *Nuns of St. Dominic v. Younkin,* 118 Kan. 554, 235 Pac. 869; *Barnhart v. Bowers,* 143 Kan. 866, 57 P. 2d 60; *In re Estate of Porter,* supra; and *Commercial National Bank v. Martin,* 185 Kan. 116, 340 P. 2d 899.)

A trust may be valid as a trust for the advancement of religion although in the terms of the trust it is not stated in specific terms that the purpose is religious. Thus, the fact that a legatee or devisee is a religious organization or a person holding a religious office *may indicate* that it is to be applied for religious purposes, although by the terms of the trust its application is not specifically so limited. (Restatement of Law, Trusts, § 371c, p. 1150; and 4 Scott on Trusts [2nd Ed.], § 371.3.) The foregoing principle of law was applied in *Lehnherr v. Feldman,* 110 Kan. 115, 121, 202 Pac. 624.

Any trust which comes within an approved definition of a charity and which is for the benefit of an indefinite class of persons sufficiently designated to indicate the intention of the donor, is a charitable trust. (14 C. J. S., Charities, § 1c, p. 413.)

A charity is broadly defined as a gift for general public use. In the legal sense a charity may be more fully defined as a gift to be

applied consistently with existing laws for the benefit of an indefinite number of persons, *either by bringing their minds or hearts under the influence of education or religion,* by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings, or works or otherwise lessening the burdens of government. (*Nuns of St. Dominic v. Younkin,* supra; *Jackson v. Phillips & others,* 96 Mass. 539, 555; and 14 C. J. S., Charities, § 1, p. 410.)

It is essential to a valid charitable gift that it be for a purpose recognized in law as charitable. To constitute a charitable use or purpose, it must be a public as distinguished from a private one. It must be for the public use or benefit, and it must be for the benefit of an indefinite number of persons. However, this does not prevent the donor from selecting some particular class of the public and limiting his benefaction to that class, provided the class is composed of an indefinite number of persons rather than certain designated and named individuals. (14 C. J. S., Charities, § 12, p. 439; See *Washburn College v. O'Hara,* supra; *Nuns of St. Dominic v. Younkin,* supra; *Clark v. Watkins,* 130 Kan. 549, 287 Pac. 244; *Hollenbeck v. Lyon,* 142 Kan. 352, 47 P. 2d 63; *Barnhart v. Bowers,* supra; *In re Estate of Porter,* supra; see, also, 4 Scott on Trusts [2nd Ed.], § 375.2.)

The most important differences between private trusts and charitable trusts relate to the validity of the trust. There cannot be a private trust unless there is a beneficiary who is definitely ascertained at the time of the creation of the trust or definitely ascertainable within the rule against perpetuities (See, Restatement of Law, Trusts, § 112, p. 288). On the other hand, a charitable trust can be created although there is no definite or definitely ascertainable beneficiary designated (See, Restatement of Law, Trusts, § 364, p. 1136), and a charitable trust is not invalid although by the terms of the trust it is to continue for an indefinite or unlimited period (See, Restatement of Law, Trusts, § 365, p. 1136). Trusts for public charitable purposes, being for objects of permanent interest and benefit to the public, and perhaps being perpetual in their duration, are upheld in certain circumstances under which private trusts would fail. (10 Am. Jur., Charities, § 6, p. 589.) Thus, it has been held a Kansas municipality has power to accept a trust and administer it in perpetuity if the purpose of the trust created by such bequest is for a public, charitable use. (*Treadwell*

*v. Beebe,* 107 Kan. 31, 190 Pac. 768.) In *Commercial National Bank v. Martin, supra,* it was held a charitable trust for educational purposes could not be declared ineffective because the use might be in perpetuity, inasmuch as charitable trusts are not subject to the rule. (Citing, *In re Estate of Woods,* 181 Kan. 271, 311 P. 2d 359; 2 Bogert, The Law of Trusts and Trustees, § 352, pp. 518-520; 70 C. J. S., Perpetuities, § 30, pp. 613, 614.) As long as the property given in trust vests in the trustee immediately or within the period prescribed by the rule, trusts for charitable uses are not obnoxious to the rule although they may continue forever and beneficial interests may arise under them at a remote time.

The law must find in the trust, if it is to achieve the status of being "charitable," some social advantages which more than offset the detriments which arise out of the special privileges accorded to that trust. (2A Bogert, The Law of Trusts and Trustees, § 361, p. 3.) While the human beings who are to obtain advantages from charitable trusts may be referred to as beneficiaries, the real beneficiary is the public and the human beings involved are merely the instrumentalities from whom the benefits flow. Whether a gift is or may be operative for the public benefit is a question to be answered by the court.

When once a devise or grant is determined to constitute a charitable trust, courts look with liberality on the instrument creating it for the purpose of carrying out the intention of the donor. Technical rules of construction, which have often prevented conveyances or bequests from taking effect, are disregarded. (*Lehnherr v. Feldman, supra; In re Estate of Porter, supra;* and *Commercial National Bank v. Martin, supra.*) Moreover, when it is ascertained that the donor intended to create a public charity it will not be allowed to fail because the trustee is indefinite or uncertain or incapable of taking. (*Lehnherr v. Feldman, supra;* Restatement of Law, Trusts, § 397, p. 1190; 4 Scott on Trusts [2nd Ed.], § 397, p. 2776; and see, *Barnhart v. Bowers, supra.*)

The contention by the appellees that the trust intended for the Methodist Church of Hays must fail because of the uncertainty of the trustees, none being individually named, overlooks the maxim that equity will never allow a trust to fail because of the want of a trustee. Furthermore, the term "Trustees of the First Methodist Church of Hays, Kansas" is a sufficient designation to determine who the trustees are even though the trustees may be

composed of different individuals from time to time. (See *Lehn-herr v. Feldman, supra*, at page 117.)

The foregoing principles of law relating to charitable trusts have either been stated or applied in the Kansas cases cited in this opinion, and while academic, assist in dispelling arguments advanced by the appellees in support of the trial court's decision.

The crux of appellees' argument lies in the isolation of the words "parish" and "members," which they have dissected from the will, presented inversely from the chronological order in which the testator used them, and, with the assistance of extrinsic evidence admitted by the trial court, molded into a theory that the testator intended the *individual members* of the respective churches in Hays, Kansas, to benefit from the trusts. It is argued the construction of the will which is proposed and asserted by the two churches requires the word "parish" and the word "members," in the respective devises, to be excised and eliminated.

The word "parish" has been defined in Webster's New International Dictionary, Second Edition, as:

"3. (*a*) an administrative district of various churches, especially a part of a diocese, under the charge of a priest of minister; (*b*) the members of the congregation of any church, without regard to the territory in which they live; congregation; (*c*) the territory in which the members of a congregation live."

In *Milford v. Godfrey*, 18 Mass. 91, a precinct or parish was said to be a corporation established solely for the purpose of maintaining public worship and its powers were limited to that object. It must also be noted that parishioners are referred to as members of a parish.

The word "member" is defined in Webster's New International Dictionary, Second Edition, as:

"3. a person belonging to some association, society, community, party, etc."

Interpreting the will in accordance with the rules of construction heretofore stated, the gifts for the benefit of the "Parish" of Saint Joseph's Catholic Church were clearly intended to make Saint Joseph's Catholic Church the beneficiary of the trust.

Referring to the words used in the will concerning gifts to the Methodist Church, it must be noted the testator used the plural, "members." Without any identification the term "members" signifies an organization. The word "members" used without limitation in connection with the Methodist Church has reference to the whole of the church membership, the entire church body.

. Who the members of a religious society are must, as a general rule, be determined by reference to the rules, constitution, or by-laws of the society, and by reference to the statutes governing such bodies. The essence of the relation of members in a religious society is held to be the agreement of· the parties, including financial support in .some form where the statute requires it, and generally a profession of faith, adherence to the doctrines of the church, and a submission to its government are required. (76 C. J. S., Religious Societies, § 11, p. 755.)

In our opinion, the testator's use of the words "parish" and "members" in association ,with the organizations named in the will was intended to refer to the respective ecclesiastical societies, and we are confident he intended the word "members" to have the same connotation as the word "parish." We think there can be no doubt that the testator intended his bequests and devises to go to the two organizations named, and that he intended the two organizations to be his beneficiaries. (See, *Atwater v. Russell*, 49 Minn. 57, 51 N. W. 629.)

The words "parish" and "members" were simply used by the testator to limit the trustees in the use of the trust property to the respective congregations, rather than to permit the trustees to use it for the benefit of other localities. It was his intention to confine the trustees in activities of the two religious ·organizations to the area which they served.

It remains to inquire whether the respective bequests and devises are void because the testator designated no uses to which the property should be applied. The appellees argue the phrase "for the benefit of" has plain meaning, but the trusts created are restricted to the two distinct class groups and no language, not even a single word, is supplied by the testator to indicate that religious trusts were intended.

The testator gave his property under the paragraphs in question to "Bishop Frank A. Thill or his successor . . . for the benefit of the Parish of Saint Joseph's Catholic Church, Hays, Kansas," and to the "trustees of the First Methodist Church, Hays, Kansas . . . for the benefit of the members of the First Methodist Church, Hays, Kansas."

A designation and limitation of the uses to which the property may be applied is found in the name and nature of the devisees and legatees. As the term "church" imports an organization for relig-

ious purposes, a gift to a church or a church society by name, without declaration or restriction as to the use to be made of the subject matter of the gift, must be deemed to be a gift for the promotion of the purposes for which the church was organized. (*Lehnherr v. Feldman,* supra; and 14 C. J. S., Charities, § 17, p. 449.) Courts look with favor upon trusts for charitable purposes and construe language creating such trusts most favorable to their validity. (*Hollenbeck v. Lyon,* supra; and *Lehnherr v. Feldman,* supra.)

It was explicitly stated in each of the devises and bequests to the respective trustees of two churches the property was to be "held, used, or disposed of." This gives the trustees discretionary powers to use or dispose of the properties and devote the proceeds to the objects of the trust. The income or other benefits derived from the trust property can be used by the trustees only for religious purposes or for the promotion of the purposes for which the respective churches were organized. Nowhere in the will is language used which would indicate an intention of the testator that the individual members of the two churches could take possession of the property, or that the members of the respective churches could obtain a private gain or benefit or proprietary interest therein such as would pass to their heirs upon the death of the present members, or any other members, of the respective churches.

The will of the testator, found to have been duly admitted to probate, does not support the conclusion of the trial court that the trust provisions set forth therein are void, or the judgment that the property specified in such provisions should pass by intestacy to the appellees.

The judgment of the trial court is reversed.