THE STATE OF KANSAS, *ex rel. Fred S. Jackson, as Attorney-general,* v. SCHOOL DISTRICT NO. 1 OF EDWARDS COUNTY *et al.*

No. 16,422.

SYLLABUS BY THE COURT.

1. STATUTORY CONSTRUCTION — *Directory or Mandatory Provisions—"May."* Primarily and as ordinarily used in a statute the word "may" is permissive rather than peremptory. It may be given the imperative meaning if that was the obvious intention of the legislature, but the sense in which the word is used must always be determined by the context of the act.

2. SCHOOL DISTRICTS—*Special Meetings.* In the statute relating to school district meetings which provides that "special meetings may be called by the district board, or upon a petition signed by ten resident taxpayers of the district" (Gen. Stat. 1901, § 6122), the word "may" is used in its permissive sense.

Error from Edwards · district court; CHARLES E. LOBDELL, judge. Opinion filed July 3, 1909. Affirmed.

*Fred S. Jackson,* attorney-general, and *D. A. Banta,* for The State.

*G. Polk Cline,* and *A. C. Dyer,* for the defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a proceeding in mandamus to compel the school board to call a special meeting for the reconsideration of the selection of a site for a high-school building in the city of Kinsley. It was alleged that at a meeting duly called ·for the purpose of selecting a location for the building a certain site was designated by the legal voters of the school district; that shortly thereafter appraisers were duly selected, who condemned and appraised a part of the ground chosen for the site, and the appraised value of the same, together with the purchase-price of the remainder of the site, amounted to $4000. It was then averred that for a number of reasons the site selected was deemed undesirable and unsuitable by some of the electors, and that another site, which was named, was more desirable and could be procured for $2250, thus saving to the district the sum of $1750. There were averments, too, that prior to and at the school meeting representations were made that the site chosen could be procured for $1500, and that electors were thereby induced to vote for that site; that a petition signed by more than ten resident taxpayers of the district had been presented to the school board asking that a special meeting of the electors of the district be called to reconsider the location of the school building, but that the board had refused the request.

An alternative writ was issued in the first instance, but upon a further hearing on the pleadings a demurrer was sustained and the writ denied. The ques-

tion presented is: Should the school board be compelled by mandamus to call a special meeting of the electors to choose a site for a school building when one has already been designated at a meeting duly called and where the school board, acting on that designation, has proceeded to condemn and acquire the site selected? The statute relating to annual and special meetings of the district provides, among other things:

"An annual meeting of each school district shall be held on the last Thursday of July in each year, at the schoolhouse belonging to the school district, at 2 o'clock P. M. Notice of the time and place of said annual meeting shall be given by the clerk by posting written or printed notices in three public places of the district at least ten days before said meeting. Special meetings may be called by the district board, or upon a petition signed by ten resident taxpayers of the district; but notices of such special meeting, stating the purpose for which it is called, shall be posted in at least three public places in the district ten days previous to the time of such meeting." (Gen. Stat. 1901, § 6122.)

The contention is that the provision that special meetings may be called by the district board or upon a petition signed by ten resident taxpayers of the district means that the board not only may, but must, call the meeting upon the presentation of the petition. Primarily and as ordinarily used in a statute the word "may" is permissive rather than peremptory. It is sometimes regarded as synonymous with must, as for instance "where public authorities are authorized to perform an act for the benefit of the public, or for an individual who has a right to its performance." (*Phelps v. Lodge*, 60 Kan. 122, 124.) It should be given its ordinary meaning, however, unless the terms and provisions of the statute compel the other view. As was said in *In re McCort, Petitioner*, 52 Kan. 18, "the sense in which the word is used must always be determined from the context of the act." (Page 20.)

Looking at the word in the connection in which it is

used in the statute quoted it can hardly be said that the obvious intention of the legislature was to make the calling of a special meeting an imperative requirement. It does not appear that either the interest of the public or of third persons compels the exceptional interpretation. The legislature has provided for an annual school meeting, at which the important affairs of the district are to be decided. Among other things to be done at this meeting are the election of officers, the designation of a site for a schoolhouse, the making of provisions for the purchase or lease of a site or the sale of one no longer in use, the building, hiring or purchasing of a schoolhouse, the repairing or the furnishing of a schoolhouse with necessary fuel and appendages, the payment of floating indebtedness, the voting of a tax and apportioning the amount to be used for the payment of teachers and other purposes, deciding the length of time the school shall be held, as well as to give directions and make provisions for any litigation in which the district is a party. (Gen. Stat. 1901, § 6127.) Specific provision is made for a special meeting where the time for the regular meeting has been allowed to pass without the holding of one. It can hardly have been intended that when a meeting has been held and questions like those enumerated have been decided the same questions can be reopened at the instance of ten dissatisfied petitioners. Can it have been intended that after a tax has been voted, contracts made and a teacher employed, ten taxpayers who failed to attend or who were outvoted at the annual meeting can on request require another meeting to be called and another test of strength taken on one or more of these propositions? If at the annual meeting directions were given to put on a new roof or to make other repairs on a schoolhouse, after the contract has been let may a resident builder who failed to get the job procure nine others to join him in a petition and have the questions reopened and the contracts, partially executed, annulled? If questions which provoke controversy, like the selection

of a site, could be reopened whenever ten disappointed taxpayers might ask for another vote, dissension and disorder would prevail in many districts much of the time. In carrying out the directions given at the annual meeting the district board may desire the advice of the electors, and emergencies may arise so that the district board may upon their own initiative or upon a petition ask for an expression of the electors of the district at a special meeting, but whether such a meeting is necessary was evidently left to the discretion of the district board regularly chosen to look after the affairs of the district.

This case illustrates the wisdom of leaving the calling of a special meeting to the discretion of the district board. It appears that after the site was chosen in pursuance of the direction of the district meeting the district board proceeded to obtain a part of the ground by condemnation and a part by purchase. The complications and litigation that might have arisen if the board had undertaken to repudiate the obligations assumed under the direction given at the regular meeting might well be considered by the board in deciding whether the public good or justice required the calling of another meeting.

*The State v. Umbarger*, 69 Kan. 66, is cited as showing that the district board was without discretion to refuse the petition. There a special meeting was in fact called, and it was decided that the directions given at that meeting must be followed by the district board. There was no intimation, however, that the district board is compelled to call the meeting upon the request of the petitioners.

There are some averments of misrepresentations prior to and at the first meeting, but these are not of such a character as to affect the validity of the meeting or the determination of the question involved—the proper interpretation of the word "may" as used in the statute. The district court, we think, reached the correct conclusion, and hence its judgment is affirmed.