No. 21,023.

OLIN G. CLINE et al., *Plaintiffs*, v. W. F. WETTSTEIN et al., *Defendants.*

SYLLABUS BY THE COURT.

1. SCHOOL DISTRICTS—*Special Meetings—Discretion of District Board.* The granting of a petition calling a special meeting of a school district rests in the discretion of the district board. (*The State v. School District*, 80 Kan. 667, 103 Pac. 136.)

2. SAME—*Bonds for One Schoolhouse Voted—Contract Let—Mandamus Proceedings to Compel Building of Two Schoolhouses—Writ Denied.* On March 4, 1916, a school district six miles long and four miles wide having a schoolhouse situated at the geographical center of the district voted bonds in the sum of $2000 to build a schoolhouse. After the board had let the contract for the erection of the new building, purchased the lumber and had torn down the old building, this proceeding was commenced to compel the board to erect two schoolhouses. *Held,* on the facts stated in the opinion petitioners are not entitled to relief, and the writ is denied.

Original proceeding in mandamus. Opinion filed December 9, 1916. Writ denied. Opinion denying a rehearing filed January 6, 1917.

*F. S. Macy, Eugene W. Davis, G. W. Sawyer,* and *Clyde R. Commons,* all of Liberal, for the plaintiffs.

*V. H. Grinstead,* and *E. C. Warfel,* both of Liberal, for the defendants.

The opinion of the court was delivered by

PORTER, J.: This is an original proceeding in mandamus to compel the respondents, the school board of district No. 24, Stevens county, Kansas, to construct and erect two schoolhouses in the district, and to maintain two schools for the ensuing year.

The petitioners are residents and qualified electors of the district. The alternative writ alleges that on the 4th day of March, 1916, a special election was held at which the district voted bonds in the sum of $2000 for the purpose of erecting *"schoolhouses";* that at the annual meeting held April 14, 1916, no action was taken in reference to the erection "of new schoolhouses for which said bonds were voted," and no action was taken in regard to the disposition of the old schoolhouse which was situated on land not owned by the district. It is then alleged that thereafter upon a petition signed by ten resident taxpayers and legal voters of the district, the board called a special meeting to be held on the 22d day of May, 1916, for the following purposes:

"First: Building two school buildings in said district. Second: To locate the sites for said school buildings. Third: For the purpose of reconsidering the levy for school purposes for the year 1916. Fourth: To vote upon the proposition of disposing of the said old school building."

It is alleged that at the meeting of May 22 a motion was duly made and seconded that the district build two schoolhouses with the proceeds of the bonds theretofore issued, that the motion was put to vote, and out of fifty-eight, which was the total number of legal voters in the district, there were thirty votes in favor of the motion and twenty-one votes against it, and that without any action being taken upon the other propositions for which the meeting was called the meeting adjourned.

The writ then alleges that a petition signed by a majority of the legal voters and taxpayers of the district was presented to the district board asking for a special meeting of the district, to be held June 20, 1916, for the purpose of "correcting minutes of last special meeting, and, 1. Locating the site for the new school building. 2. Raising the levy for school purposes for the year 1916, to $860.00. 3. To vote on the proposition of disposing of old school building."

It is not alleged that the district board called this meeting; it is alleged that the notice was posted by the district clerk and the meeting held, at which it was lawfully determined that the sites for the two schoolhouses be located and the schoolhouses built as follows: One schoolhouse to be built one mile and a half south of the old schoolhouse on land (describing it.) One schoolhouse to be built two miles north of the old schoolhouse on land (describing it).

It is alleged that the respondents have torn down and destroyed the only school building in the district and that the district does not own or control a school building. The alternative writ was issued September 5, 1916, when the action was commenced, and directed the respondents to answer and show cause why the peremptory writ should not issue requiring them to construct two schoolhouses as provided for at the special meeting of June 20, 1916.

The respondents' answer pleads quite fully the facts relied upon as a defense. This opinion may be shortened by referring to these facts later in connection with the evidence, which is comprised of depositions taken by the respondents. After the main witnesses on behalf of respondents had testified, all the petitioners were called as witnesses, but they refused to testify, two of them stating that they expected to testify before this court when the case was set for hearing. The case has been submitted on the pleadings and the evidence taken by the respondents.

School district No. 24, in Stevens county, is six miles north and south, and four miles east and west. The Seward county line bounds the district on the east and the Kansas-Oklahoma state line is the southern boundary. In 1908 a schoolhouse was built at the geographical center of the district upon land owned by F. B. Shinkle and under an agreement by which he was to convey the site to the district by warranty deed. Ever since the building was erected the school has been maintained at this place until the building was torn down as hereinafter stated. On June 7, 1916, Mr. Shinkle conveyed the land to the district by a deed which the district accepted and filed for record.

On March 4, 1916, at a special election, the district voted bonds in the sum of $2000, not as petitioners allege, for the

purpose of erecting "schoolhouses," but for the purpose of erecting a "schoolhouse" in the district. The controversy over the question of two schoolhouses developed later. The bonds were issued and sold to the state-school fund. At the annual meeting of the district, which was held April 14, 1916, no action was taken in regard to the disposition of the old schoolhouse. The meeting voted for an eight-months' term of school and for a levy that would produce $525. The treasurer reported $150 on hand. There was a discussion with reference to having two schools in the district, but no record was kept of this discussion in the minutes. Mr. Brightup, clerk of the board, who is one of the petitioners in this action, opposed having more than one school, and explained to the meeting that it took $525 to run the one school the previous year, and he placed the figures on the blackboard showing it would take $1200 to run two schools, and informed the meeting that the assessed valuation of the district (which is $191,811 for the year 1916) was not enough to justify two schools without voting an excessive tax, and that the district paid from $65 to $75 per month for a teacher. The meeting then adjourned. A petition was presented later for a special meeting to be held May 22. The evidence shows that it was not presented to the board, but was presented to the individual members. No meeting was called by the board, but Mr. Brightup, the clerk, posted the notices, and the meeting was held and attended by a majority of the legal voters of the district. The notice stated that the purposes for which the meeting would be held were: First. Building two schoolhouses in the district. Second. To select a site for them. Third. To reconsider the levy for school purposes. Fourth. To vote on the proposition of disposing of the old school building.

The evidence shows, without any dispute, that Mr. Wettstein, a member of the board, who is one of the respondents, presided at the meeting, and before putting a motion which had been made for two schoolhouses, he stated that he supposed every one understood that the adoption of the motion meant a change in the site, and that in order to do this it would require a majority of the legal voters in the district. There was some discussion and an examination of the school laws with reference to the changing of the school site, but the

vote was taken with the understanding that it would require a majority of the voters in the district. There were thirty votes in favor of two schoolhouses and twenty-one votes against, and the chairman declared the motion lost. A motion was made to adjourn the meeting and it carried. The evidence shows that the minutes of the meeting, as first written up by the clerk, showed that the motion to have two schoolhouses was lost.

Thereafter, on June 7, 1916, the school board procured a deed from the owner of the land conveying the premises to the district, and on the same day entered into a written contract for a new schoolhouse; they tore down the old building, contracted for the purchase of lumber, and had some of the sand hauled for the construction of the new building when they were enjoined from further proceeding by the district court of Stevens county in a suit brought by some of the petitioners in this action. On July 8, 1916, the district court dissolved the injunction. Thereafter some of the petitioners served written notice upon the contractor and upon the lumber company, notifying them not to proceed with the contract and not to furnish any material therefor, threatening litigation if the notice was disregarded.

The petition asking the board to call a special meeting for June 20, 1916, was not, as the writ alleges, signed by a majority of the legal voters of the district, nor was it presented, except to the individual members of the board. At the time it was presented to Mr. Wettstein it contained twelve names. The meeting was not called by the board, but the clerk prepared and posted notices of the meeting and a meeting was held which was attended by a majority of the voters of the district. The June meeting seems to have been called upon the theory that at the special meeting of May 22 the motion that two schoolhouses be built had in fact carried, and the first business transacted at the meeting June 20 was the adoption of a motion that the minutes of the preceding meeting should not be approved, but that they should be corrected to read that the motion for the erection of two schoolhouses had carried instead of lost. There were thirty votes in favor of the erection of one schoolhouse a mile and a half south of the old site, and about twenty in favor of locating one two miles north of the old school.

The facts set forth as grounds for the peremptory writ are not borne out by the evidence, while every material fact pleaded in defense is sustained. If the application for the alternative writ had stated the facts as they existed, needless to say, the writ would not have issued. Instead of there being but fifty-eight legal voters in the district there were sixty-four, so that if it were conceded that the special meeting of May 22 was called by the board (and the evidence fails to show that it was), the proposition to erect two school buildings did not carry, as it received but thirty votes. Besides, there was no objection to nor appeal from the ruling of the chairman declaring the motion lost, and because it was understood to have failed, the other propositions were not presented nor voted upon; moreover, the vote for two schoolhouses was submitted with the understanding of those present that its adoption meant a change of site. The school laws provide that where the school building has a value of not less than $400 the site can not be changed except by at least a two-thirds vote; if the value is less than that sum a majority vote is sufficient. (Laws 1903, ch. 428, § 1, Gen. Stat. 1909, § 7409.) The value of the building must first be determined by three appraisers appointed by the county commissioners. (Laws 1903, ch. 428, § 2, Gen. Stat. 1909, § 7410.) In this case the value of the old building has never been determined; it was torn down for the purpose of erecting the new building for which the bonds had been voted, and the pleadings as well as the evidence are silent as to its former value. The board did not take down the old building until June 12, after the special meeting of May 22, and the material was placed under cover with the intention of using it in constructing the new building.

The meeting of June 20 was not called by the board. The school laws provide that "special meetings may be called by the district board or upon a petition signed by ten legal voters of the district." (Laws 1911, ch. 283, § 1.) The word "may" in this statute has been construed as permissive and not mandatory upon the board. (*The State v. School District*, 80 Kan. 667, 103 Pac. 136.) Some of the remarks of Mr. Chief Justice Johnston in the opinion in that case apply with so much force to the situation here that we quote:

"Can it have been intended that after a tax has been voted, contracts. made and a teacher employed, ten taxpayers who failed to attend 'or who were outvoted at the annual meeting can on request require another meeting to be called and another test of strength taken on one or more. of these propositions? If at the annual meeting directions were given to put on a new roof or to make other repairs on' a schoolhouse, after the contract has been let may a resident builder who failed to get the job procure nine others to join him in a petition and have the questions reopened and the contracts, partially executed, annulled? If questions which provoke controversy, like the selection of a site, could be reopened whenever ten disappointed taxpayers might ask for another vote, dissension and disorder would prevail in many districts much of the time." (p. 670.)

If the meeting held June 20 had been legally 'called, and the number of legal voters in the district had been fifty-eight instead of sixty-four, the petitioners concede that sites were not chosen for two school buildings. There were thirty votes at this meeting for building one schoolhouse a mile and a half south of the old school, but the proposition to locate a building in the north end of the county had only twenty-one votes. It is also conceded that the district has never acquired and has never taken any steps to acquire title to the lands upon which we are asked to compel the board to erect buildings.

At the hearing and in the briefs the petitioners have placed much stress upon the conditions which exist in the district and the disadvantages imposed upon some of the patrons who live near the extreme ends of the district, and we are asked to make some kind of an order which will relieve the situation. The area of the district is, of course, too great to furnish equal privileges to all the school patrons, but these conditions exist because the neighborhood is sparsely settled, and the assessed valuation of the property therein is not sufficient to justify a division of the district. The statute provides:

"That new districts shall not be formed with an assessed valuation of less than one hundred thousand dollars, and territory shall not be detached from any school district the assessed valuation of the property of which is less than one hundred thousand dollars, or the valuation of property of which would thereby be reduced below one hundred thousand dollars." (Laws 1911, ch. 268, § 7.)

The location of the district in the corner of the county doubtless makes it difficult to send part of the pupils to adjacent districts. Besides, there are but thirty-one children of school age in the district. The claim of the petitioners that

the respondents have destroyed the old building, and that there is no school building in the district, does not appeal to us with much force in view of the undisputed facts. In March the district voted bonds to build a new schoolhouse; after the special meeting of May 22 in which a proposition to build two schoolhouses had been considered and voted down, the board was proceeding to carry out the expressed will of the voters of the district, and having first procured a deed to the site which belonged to the district, and where the voters at the special election expected the new building to be erected, entered into a written contract for the construction of the new building for which the bonds had been voted. The respondents tore down the old building, made a contract for the purchase of lumber and had hauled the sand, and were proceeding to erect the new building when some of the petitioners and other patrons of the district enjoined them from proceeding with the construction. When the court dissolved the injunction the lumber dealer and contractor refused to go ahead with their contracts because the petitioners had given written notice to them threatening litigation if the contracts were carried out. The respondents say in their answer, and the evidence shows, that except for the action of the petitioners the new building would have been completed in ample time for the opening of the fall term of school.

The respondents say in their answer and testify that they are willing to provide transportation for the school children in the district who reside more than two and one-half miles from the school, in accordance with the provisions of the law. (Laws 1911, ch. 273, § 1.)

The writ will be denied.

---

### OPINION DENYING A REHEARING.
#### Filed January 6, 1917.

In a petition for a rehearing the plaintiffs reargue the contentions made at the first hearing, and further direct attention to the minutes of a meeting held June 20, showing there were thirty-three votes in favor of locating a schoolhouse one mile and a half south of the present school site; and it is insisted that thirty-three votes constituted a majority of the

sixty-four legal votes in the district. It makes no difference how many votes the proposition for other schoolhouses received at the June meeting, because it was not a legal meeting. A petition signed by twelve voters was presented to two members of the board asking for a special meeting June 20, but neither they nor the board made any order calling the meeting. The clerk of the board posted a notice of the meeting, but he was without authority to do so unless directed by the board. As said in the opinion, the granting or refusal of the petition for a special meeting was within the discretion of the board. The petition for a rehearing is denied.