No. 34,647

M. N. Bradley et al., *Appellees*, v. Minnie Cleaver et al.,
*Appellants*.

(95 P. 2d 295)

Opinion
filed November 10, 1939.

*Kenneth H. Foust*, of Iola, for the appellants.
*Guy Lamer* and *DeWitt M. Stiles*, both of Iola, for the appellees.

The opinion of the court was delivered by

Hoch, J.: This was an action in mandamus to compel a school board in a rural district to call a special meeting for the purpose of voting on the question of the adoption of a budget to maintain a high school. The district court granted the writ, and defendants appeal.

The questions presented are whether the plaintiffs are entitled to maintain the action, and whether it was within the power of the court to direct the board to call the special school meeting. The latter question will be first considered.

Although the record is silent on the point, we assume the statutory provision involved is 72-401, G. S. 1937 Supp. Following the provisions for the regular annual meeting on the second Friday in April, the section provides as follows: "Special meetings may be called by the district board, or upon a petition signed by ten legal voters of the district," etc.

It may first be noted that no question is here presented or considered as to whether the matters which, under the terms of the statute, are considered at the regular annual meeting may be determined at such special meetings, when the annual meeting has already

been held. We are now concerned only with the power to compel the calling of the special meeting.

While recital of a very few facts in the case would suffice for determination of the question of law, it may be helpful to tell the story briefly. For many years an accredited high school has been maintained by school district No. 1, in Allen county, which operates under the Barnes high-school law. The annual school meeting was held in April, 1939, following which the clerk of the board certified the school budget for the following school year to the county clerk, as the statute provides. The budget certified was for $800. This was sufficient only to maintain the grade school, and meant discontinuance of the high school. Whereupon various petitions were presented to the board of directors of the district asking for the calling of a special meeting to reconsider the matter. The board having refused or failed to call such a meeting, this action in mandamus was brought in the district court to compel them to do so.

The plaintiffs alleged, in substance, that prior to the annual meeting there had been misrepresentations by members of the board, particularly with reference to the tax levy that would be necessary if the high school were continued, and that at the meeting there were further misrepresentations; that after a budget of $3,800— sufficient for continuing the high school—had been adopted, a statement was made to the meeting by the clerk of the board that he had information from the state superintendent of public instruction—in a letter which he said he had misplaced—to the effect that if the district desired to continue the high school it would be necessary to have a direct vote upon that question, and that thereupon such a vote was taken, resulting in a small majority against continuance; that another vote was later taken on the budget, after some of the electors had left, and a budget of $800 was adopted; that subsequent to the meeting it was discovered that the letter from the state superintendent did not make the statements as reported by the clerk, and that all of this—and other alleged acts not necessary to recite—was carried on "in furtherance of a predetermined plan, scheme, design and conspiracy" on the part of members of the board to force a discontinuance of the high school.

The minutes of the meeting were put in evidence and the salient recitals therein are as follows:

"Motion made for $3,800 budget and carried.
"High school voted out—

For high school 40 votes.
Against high school 42 votes.

. . . . . . . . . . . . . .

Eight months' school voted for grades.

. . . . . . . . . . . . . .

Voted $800 budget for grade school.
These minutes read and approved."

It clearly appeared at the hearing in the district court, on the motion for the writ of mandamus, that the annual meeting had been a spirited one, and that a great deal of feeling developed. It was alleged, among other things, that the presiding officer arbitrarily refused to entertain a motion for reconsideration of the question, and it was also contended that the certification of an $800 budget was irregular because the previous adoption of a $3,800 budget had not been rescinded. But the regularity of the meeting or the validity of the certification to the county clerk are not involved in this proceeding. The trial court made no finding of fraud or conspiracy, but found that "there was a misunderstanding about the rights of the district and what they could do and what they shouldn't do, or what they would have to do." In commenting upon the matter before announcing the decision, the court said: .

"There seems to have been a misunderstanding, at least, on the part of certain of the voters, relative to what some state official, or state board, or state superintendent, or state board of education had said in regard to the school. Well, that shouldn't have been in that meeting at all. That is unfortunate. Maybe the clerk tried to state what he understood from the letter introduced by the plaintiffs, but it hardly seems a letter capable of the interpretation as was stated at the meeting; but, of course, I don't know as you could say that anybody just fraudulently or willfully or intentionally tried to deceive somebody else, because lots of times, in making statements of things, we all get kind of mixed up, and in trying to give an account of something, we might give the wrong impression."

The question as to whether the provision in section 72-401, relative to the calling of special meetings by the school board, is permissive or peremptory in character, is not a new one before this court. It was squarely presented in the case of *State v. School District,* 80 Kan. 667, 103 Pac. 136. The decision hinged upon the interpretation of the word "may" in the provision of that section heretofore cited. It was there held that the word "may" is permissive rather than peremptory and a writ of mandamus was refused. Among other things, the court said:

"The contention is that the provision that special meetings may be called by the district board or upon a petition signed by ten resident taxpayers of

the district means that the board not only may, but must, call the meeting upon the presentation of the petition. Primarily and as ordinarily used in a statute, the word 'may' is permissive rather than peremptory. It is sometimes regarded as synonymous with 'must,' as, for instance, 'where public authorities are authorized to perform an act for the benefit of the public, or for an individual who has a right to its performance.' (*Phelps v. Lodge,* 60 Kan. 122, 124.) It should be given its ordinary meaning, however, unless the terms and provisions of the statute compel the other view. As was said in *In re McCort, Petitioner,* 52 Kan. 18, 'the sense in which the word is used must always be determined from the context of the act.' (p. 20.)

"Looking at the word in the connection in which it is used in the statute quoted, it can hardly be said that the obvious intention of the legislature was to make the calling of a special meeting an imperative requirement. It does not appear that either the interest of the public or of third persons compels the exceptional interpretation. The legislature has provided for an annual school meeting, at which the important affairs of the district are to be decided. Among other things to be done at this meeting are the election of officers, the designation of a site for a schoolhouse, the making of provisions for the purchase or lease of a site or the sale of one no longer in use, the building, hiring or purchasing of a schoolhouse, the repairing or the furnishing of a schoolhouse with necessary fuel and appendages, the payment of floating indebtedness, the voting of a tax and apportioning the amount to be used for the payment of teachers and other purposes, deciding the length of time the school shall be held, as well as to give directions and make provisions for any litigation in which the district is a party. (Gen. Stat. 1901, § 6127.) Specific provision is made for a special meeting where the time for the regular meeting has been allowed to pass without the holding of one. It can hardly have been intended that when a meeting has been held and questions like those enumerated have been decided the same questions can be reopened at the instance of ten dissatisfied petitioners. . . . If questions which provoke controversy, like the selection of a site, could be reopened whenever ten disappointed taxpayers might ask for another vote, dissension and disorder would prevail in many districts much of the time. . . .

"This case illustrates the wisdom of leaving the calling of a special meeting to the discretion of the district board." (pp. 669, 670, 671.)

In announcing its decision the trial court referred to the above-quoted decision, expressed disagreement with it, and made some comment concerning Chief Justice Johnston, who delivered the opinion for the court. The memory of the late, beloved chief justice needs no defense, and extraneous comment concerning the matter would have as little place here as it had in the trial court. Suffice it to say that the decision in the case of *State v. School District,* supra, has stood as the established interpretation of the statute for more than thirty years and in no case that we have been able to find has it been disregarded or modified. It has been cited in other cases and was specifically followed in the case of *Cline v. Wettstein,* 99 Kan.

404, 161 Pac. 617. No persuasive reasons have been advanced for now reversing the holding of those cases. Neither the trial court nor this court is charged with responsibility for provisions of existing law or for saying what they think the law ought to be, but both are responsible, upon issues properly presented, for determining as best they may, without fear or favor, what the law is.

Although a determination of the question of whether the appellees here were entitled to maintain an action in mandamus is not required, inasmuch as the conclusion heretofore stated disposes of the case, we make brief reference to it. The general and well-established rule is that mandamus is an extraordinary remedy, discretionary in character, and it may ordinarily be brought only on relation of the proper public officials, and that private citizens may maintain it only where they have a special and peculiar interest in the matter not common to the public generally. The line is not always easy to draw, and it is not necessary to discuss here the various decisions of this court on the point cited by appellants and appellees. Perhaps the decision of this court nearest in point is the case of *Gormley v. School Board*, 110 Kan. 600, 204 Pac. 741. In that case certain resident electors and taxpayers of a rural high-school district brought an action in mandamus to compel the school board to call a special election to vote on the "disorganization" of the high-school district. It was held that the petitioners did not have such a special or peculiar interest in the matter as to entitle them to maintain the action. Appellees discuss that case and distinguish it from the instant case on the basis of certain statements made in the opinion. They call attention to the argument made in the other case that the petitioners were not seeking to secure school advantages for their children, but were seeking to discontinue a school that had already been established, and that if they did not want their children to attend high school they could accomplish that purpose without resorting to a writ of mandamus. Appellees urge that it is a fair inference from the argument made in the opinion that the court would have held petitioners entitled to maintain the action if they had been seeking to secure school privileges in the district rather than the discontinuance of the school. Whatever force there may be in appellees' contention, we need not here speculate as to what the court might or would have done if a different situation had been presented to it. A determination of the question is not necessary in the case here presented.

The judgment is reversed with directions to deny the writ.