No. 36,435

THE DAUGHTERS OF THE AMERICAN REVOLUTION OF KANSAS, Topeka Chapter, *Appellant,* v. WASHBURN COLLEGE, *Appellee.*

(164 P. 2d 128)

Opinion filed December 8, 1945.

*Otis S. Allen,* of Topeka, argued the cause, and *George S. Allen,* of Topeka, was on the briefs for the appellant.

*Robert Stone,* of Topeka, argued the cause, and *James A. McClure, Robert L. Webb, Beryl R. Johnson* and *Ralph W. Oman,* all of Topeka, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This action, commenced June 12, 1944, was to recover a sum of money, delivered by the plaintiff to the defendant for a scholarship fund, as more fully set forth later. Judgment was rendered for the defendant and the plaintiff appeals.

Issues were fully joined by the pleadings. The cause was submitted to the trial court on a stipulation of facts.

In the petition it was alleged that on September 20, 1920, the plaintiff and the defendant entered into an agreement by which plaintiff agreed to deliver to defendant $1,250 in trust for the establishment of a scholarship in memory of one Victor Blakely who lost his life in military service during the World War in 1918, conditions of the scholarship being more fully mentioned later; that the trust was to continue for ten years; that the $1,250 was delivered and for the period of ten years the defendant carried out

the contract by giving a full tuition to a student; that by mutual consent of the parties the defendant retained the $1,250 and until 1941 a full tuition was given, when the defendant ceased to do so and ever since has failed and refused; that since 1941 the defendant claimed to have used the income from the fund to apply on tuition of a student in Washburn Municipal University, but such application was without consent of plaintiff and not in accordance with the agreement; that in 1941 the defendant transferred its lands, buildings and equipment to Washburn Municipal University and since that time had not and was unable to perform the duties of the agreement; that the $1,250 was in possession of the defendant and it refused to return the same to plaintiff who was the owner thereof. The prayer was for judgment ordering return of the $1,250 and the earnings since 1941 and for equitable relief.

The answer contained a full statement of the establishment by plaintiff of what defendant refers to as a gift, and a history of the tuition paid from the income thereof, alleged at some length the pleadings and judgment in an action by Washburn College against Washburn Municipal University for a declaratory judgment as to matters incident to the college turning certain property over to the university, and alleged that it had no obligation to plaintiff as prayed for by plaintiff, and prayed that plaintiff take nothing in the action.

Plaintiff replied with a general denial.

We shall not review the stipulation of facts, and the correspondence attached thereto, in any detail, but therefrom we abstract the following:

Plaintiff is a corporation. Defendant is a nonprofit corporation for the purpose of promoting the diffusion of knowledge and the advancement of education, virtue and religion. On April 23, 1920, the plaintiff and defendant agreed upon the establishment of a scholarship fund by plaintiff and the agreement was reduced to writing. Under date of April 27, 1920, D. L. McEachron, vice-president of defendant, addressed a letter to Miss Clara Francis, vice-president of plaintiff, reciting:

"Confirming the agreement we reached in the conference with your committee on Friday last, I desire to say that Washburn College will gratefully receive the scholarship that the Topeka Chapter of the Daughters of the American Revolution propose to found, will invest the funds in safe securities and use the interest of the same to pay the tuition of some ex-service man, to be selected under a plan approved by your Chapter. Further, that this

scholarship will be listed in the annual catalog of the College under an appropriate name and with a statement concerning its founders and its purpose.

"I wish further to say that the College will accept at full value any government bonds that may at present be in the funds raised for the establishing of this scholarship, and that for a period of ten years from the first day of August, 1920, the college will agree to supplement the income from this scholarship, so that it will provide full tuition for the holder in the regular courses of the College of Liberal Arts and Sciences and in the School of Law.

"Will you kindly convey to your Chapter the appreciation of Washburn College of their praiseworthy effort and our pleasure in being made the agent of your beneficence."

On September 25, 1920, a ceremony was conducted at Washburn College at which time plaintiff made its pledge to initiate its plan to establish the scholarship. The pledge was in writing, and recited in part:

"Victory Scholarship established at Washburn
College by Topeka Chapter
Daughters American Revolution
1920

"This scholarship shall be called the Victor Blakely Memorial Scholarship.

"Preferred conditions for its benefits are to be soldiers of the European War and their descendants. The descendants of Charles G. Blakely, Jr. are especially recommended should they be students at Washburn College. The student to whom this scholarship shall be given is to be selected each year by Washburn College and the name immediately sent to the Regent of Topeka Chapter D. A. R. If, however, at any time there should be no proper candidate for the scholarship the matter of the award shall be by Washburn College referred to Topeka Chapter, D. A. R. for decision as to who shall, that year, be eligible for the scholarship."

and continued with a statement that the scholarship was a memorial to a patriot and founded in a spirit of patriotism, and that each student holding the scholarship should be made acquainted with the circumstances of the death of Victor Blakely. It was signed by officers of plaintiff and bore an endorsement reciting as follows:

"Received from Topeka Chapter Daughters American Revolution the sum of one thousand dollars ($1000) to establish the Victor Blakely Memorial Scholarship according to the terms of the agreement embodied in letter attached hereto signed by D. L. McEachron, Vice-President Washburn College, under date of April 27, 1920.                     D. L. McEACHRON
                                                           Vice-Pres.
                                                           Washburn College"

At later dates additional sums of $50, $100 and $100 were added to the $1,000. When the last payment was made on July 2, 1924, P. P. Womer, then president of defendant, wrote a letter to plain-

tiff's representative stating the payment completed the scholarship of $1,250, and that it was not enough to cover full tuition of a student at Washburn, which was $125 per year, and he hoped plaintiff at some time would see fit to contribute a balance of $850 to make the investment large enough to yield the total tuition of a student and—

"However, in accordance with our agreement, we will see that the full tuition is granted to the beneficiary of this scholarship."

The defendant invested the funds safely, listed the scholarship in its catalog and used the income toward the payment of tuition of a student selected under the plan, and from other sources augmented the income to an extent necessary to provide the full tuition. This was done continuously from September, 1920, to June, 1930. During the first two years full tuition was $100 per year, during the next three years $125 per year; during the next four years $150 per year and the last year $180 per year; making a total of $1,355 so provided by defendant during the first ten-year period. Thereafter for a period ending in June, 1941, further full tuition was furnished at $180 per year or an aggregate of $1,980. Beginning in 1929 the income from the scholarship fund and other special funds became reduced, a condition continuing until June, 1941. In 1941 Washburn Municipal University of Topeka was established and under a contract defendant conveyed its school plant to the university, under conditions which need not be set forth in detail. After operation by the university started, the defendant applied the income from the fund in question to the payment of tuition of a student selected under the plan for the school years commencing in 1941, 1942 and 1943. No student beneficiary was selected for 1944 and the income available but not used was $40.31. Attached to the stipulation of facts are letters passing between officers of the plaintiff and defendant, in which plaintiff expressed the belief it was entitled to a full scholarship as provided in its original agreement and if defendant was unable to fulfill the contract, plaintiff asked that the full scholarship fund of $1,250 be returned to it.

The cause was submitted to the trial court upon the pleadings, the stipulation of facts and written briefs, and upon consideration it concluded there had been no breach on the part of defendant of its agreement with plaintiff and that plaintiff was not entitled to

recover, and it rendered judgment accordingly. Plaintiff appeals to this court.

Appellant makes three general contentions that the trial court erred in its judgment, and that it is entitled to recover for the following reasons: (a) That the fund was delivered to appellee as a private trust, under an agreement appellee was to use the income to furnish a full scholarship to students to be selected from year to year, for a period of ten years. (b) Being a private trust for a limited period in which appellee acted as trustee and agent for the appellant as settlor of the trust, the fund at all times belonged to appellant, and, no one else having any right or interest in it, the appellant had the absolute right to terminate the trust and recover the fund at any time. (c) The appellee has ceased to be an educational institution and, since 1941, cannot and has not carried out the terms of the trust, and is legally bound to restore the fund to appellant, the owner thereof.

In a very summary way it may be said appellee contends it is a charity, and the gift made by appellant was a gift to charity; that there was no provision for revocation of the gift; that the gift contained no restrictions, conditions, reservations, provisions for forfeiture or reversion and therefore vested legal title in appellee, as well as other contentions which will be noted to any extent necessary to a determination of the appeal.

In a preliminary way, it may be stated the record as abstracted contains letters passing between representatives of appellant and appellee, and possibly of Washburn Municipal University, although the latter does not clearly appear, all written in 1942 and 1943, and in the briefs are references to them, as well as to the suit between Washburn College and Washburn Municipal University for a declaratory judgment, and the findings of fact and judgment therein. The fact of the establishment of the scholarship, the terms under which it was established, and the legal conclusions to be drawn, depend on the interpretation and construction to be placed on the McEachron letter of April 27, 1920, and the statement of the appellant, bearing McEachron's endorsement, both of which have been quoted above. Therefore we shall not make any reference to that correspondence, nor to the suit mentioned, for appellant was not a party to it.

Before discussing whether the scholarship created and founded by appellant constituted a private trust, a charitable trust or a gift, we

take up the question whether there was any limitation of time it was to exist. Appellant contends there was a limitation of ten years. The matter of time is referred to only in the McEachron letter of April 27, 1920. In the first paragraph it is stated the scholarship will be received, the fund invested and the interest used to pay tuition of some ex-service man under the plan, and that the scholarship will be listed in appellee's catalog, and in the second paragraph it is stated the appellee will accept bonds, "and that for a period of ten years . . . the college will agree to supplement the income from this scholarship, so that it will provide full tuition . . ." In our opinion the above language cannot be read as constituting any limitation on the duration of the scholarship. We think it states about as clearly as possible that for the first ten years of the scholarship the college would add to the interest derived from the scholarship funds sufficient moneys that a full tuition would be provided. There was no limitation of time for which the scholarship would endure nor any provision that at the end of ten years or any other period that it should cease.

Did the agreement evidenced by the letter and documents heretofore quoted constitute a private trust or a charitable trust? In discussing this question, we waive for the time being whether the agreement resulted in a gift. As it is common to either result, we note that there is no provision for revocation by the appellant, nor any provision that in and of itself will terminate the scholarship and restore the fund or any part of it to the appellant. In support of its contention that a private trust was created, appellant directs our attention to Restatement, Trusts, Vol. 2, p. 1091, Introductory note, and quotes the following:

"The fundamental distinction between private trusts and charitable trusts is that in the case of a private trust property is devoted to the use of specified persons who are designated as beneficiaries of the trust; whereas in the case of a charitable trust property is devoted to purposes beneficial to the community."

The above paragraph, however, is followed by one reading:

"The most important differences are those relating to the validity of the trust. There cannot be a private trust unless there is a beneficiary who is definitely ascertained at the time of the creation of the trust or definitely ascertainable within the period of the rule against perpetuities. On the other hand, a charitable trust can be created although there is no definite or definitely ascertainable beneficiary designated, and a charitable trust is not invalid although by the terms of the trust it is to continue for an indefinite or unlimited period."

For other statements of the same tenor see 11 C. J., p. 302 (Charities, § 6); 14 C. J. S., p. 415 (Charities, § 1 f); 65 C. J., p. 229 (Trusts, § 18); 10 Am. Jur., p. 589 (Charities, § 6). Under the above we think it may not be said a private trust was created. The income of the trust was not to be devoted to the use of definitely ascertained persons, but to a person to be selected from a class. Neither can it be said it was not beneficial to the community because the income was sufficient to pay tuition of only one student. Such a test solely applied would make a large fund charitable and a small fund private, and certainly that is not a true test.

Appellant also directs our attention to Restatement, Trusts, Vol. 2, p. 1145, Comment "h," stating in part that a trust for the relief of poverty is not charitable if the beneficiaries are limited to the members of a class so small that the relief of the class is not of benefit to the community. A reference to the entire paragraph will show that the subject matter is trusts for the relief of the poor.

A further examination of Restatement, Trusts, shows that charitable trust is defined as follows:

"A charitable trust is a fiduciary relationship with respect to property arising as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to equitable duties to deal with the property for a charitable purpose." (§ 348, p. 1095.)

and that—

"A trust for the advancement of education is charitable." (§ 370, p. 1146.)

Under the comment to the last section it is said:

"a. *Methods of advancing education*. Trusts for the promotion of education include trusts . . . to establish scholarships or otherwise to assist students in acquiring education. . . ."

In *Washburn College v. O'Hara*, 75 Kan. 700, 90 Pac. 234, it was held:

"In the residuary clause of a will the testator bequeathed all of the remainder of his estate, in trust, to the trustees of an incorporated educational institution, to be held by them as a perpetual fund for the higher education of young men to be selected by such trustees for the Christian ministry. *Held*, that such bequest created an educational trust, which is a public charity." (Syl.)

In *Lehnherr v. Feldman*, 110 Kan. 115, 117, 202 Pac. 624, it was said:

"It is the settled rule that courts will look with favor upon all attempted charitable donations, and will endeavor to carry them into effect, if it can be done consistently with the rules of law."

We think the trust may be not stricken down as not being a charitable trust. Under definitions relied on by appellant, the trust is not a private one. No person was specifically named as beneficiary, nor was there any provision that could possibly so result within the rule against perpetuities, which we need not discuss. On the other hand, a scholarship was established, the beneficiary of which was to be selected from "ex-service" men, under McEachron's letter, or to be "soldiers of the European War and their descendants," under appellant's declaration quoted heretofore. To say that either class is unduly limited would be to say that scholarships limited in any manner as to class could not constitute charitable trusts. That ought not to be and is not true.

Appellant also directs our attention to Restatement, Trusts, § 339, p. 1038, reciting:

"If the settlor is the sole beneficiary of a trust and is not under an incapacity, he can compel the termination of the trust, although the purposes of the trust have not been accomplished."

and to comment following. In our opinion the text and illustrations do not support appellant's contention that it had the right to terminate the trust, if for no other reason than that it was not the sole beneficiary. In fact, it was not a beneficiary at all. We need not review the authorities at length on the power of a settlor to revoke a trust created by him. Generally a private trust may be revoked only where the settlor reserved such a power, or having intended such a reservation omitted to insert it, or upon the same grounds as those upon which a transfer of property not in trust could be rescinded. See Restatement, Trusts, §§ 330, 332, 333, pp. 984, 1003, 1008. See, also, *Diller v. Kilgore,* 135 Kan. 200, syl. ¶ 6, 9 P. 2d 643; and *Moore v. Hayes,* 138 Kan. 327, 26 P. 2d 254. With respect to charitable trusts the rule is that once validly created they cannot be revoked unless the power to do so is reserved in the trust instrument. See Restatement, Trusts, § 367, p. 1138.

At various places in its brief appellant directs our attention to *Eakle v. Ingram,* 142 Cal. 15, 75 Pac. 566, 100 A. S. R. 99. In that case a private trust was created under which the trustee was required to hold the trust estate and pay the income to designated beneficiaries. After the death of the settlor, the beneficiaries brought suit to have the trust terminated. That relief was granted, it being held that the beneficiaries were the only persons interested, that the term had expired, and there was no reason why the trust

should not be terminated. It was also held that the trustee had no standing in court to dispute the application for termination. In view of our conclusion that the trust now under consideration is not a private trust and that appellant is not the beneficiary, the cited case is not in point.

We note also that in the briefs there is some mention made that Washburn College has ceased to function as an educational institution. It is conceded by the stipulation of facts that the educational institution previously conducted by it, with the attendant functions, advantages and opportunities, is now being conducted and afforded by Washburn Municipal University, which has succeeded to the school plant formerly owned by the appellee. There being no provision otherwise in the documents evidencing establishment of the scholarship, we are of opinion the income from the scholarship fund may be applied to tuition in the university.

There is some further contention that the appellee has ceased to function as an educational institution, and has no power to act as a trustee. The above, if true, does not avail the appellant. If the appellee corporation is exceeding its corporate powers, the state may raise the question, not the appellant. See, e.g., *State v. Railway Co.*, 74 Kan. 413, 87 Pac. 696; *Kern v. Newton City Commissioners*, 147 Kan. 471, 77 P. 2d 954; *Bradley v. Cleaver*, 150 Kan. 699, 703, 95 P. 2d 295; *Douglas v. City of Wichita*, 148 Kan. 619, 83 P. 2d 657. If the appellee has no power to act as trustee, the trust does not fail. A court of competent jurisdiction may in such event, appoint a competent trustee. See annotation in 5 A. L. R. 315 *et seq.*, and *Barnhart v. Bowers*, 143 Kan. 866, 57 P. 2d 60.

From the above it is concluded that appellant's contentions of error cannot be sustained.

At the request of this court, the parties filed supplemental briefs on the question whether the establishment of the scholarship, being to carry out a corporate purpose, was not a gift to the corporation and not a trust. In view of our conclusions it is not necessary that we discuss or decide the question. Those interested will find the question discussed in *Bradley v. Hill*, 141 Kan. 602, 42 P. 2d 580; *Zabel v. Stewart*, 153 Kan. 272, 109 P. 2d 177; and the annotation in 130 A. L. R. 1101 *et seq.*

The judgment of the trial court is affirmed.